COMMONWEALTH *vs.* KENNETH JOSEPH HUDSON.

Suffolk. November 2, 1993. - April 14, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Witness*, Expert, Credibility. *Evidence*, Expert opinion, Sexual conduct, Credibility of witness. *Child Abuse.*

At the trial of an indictment for rape of a child the judge properly allowed expert testimony concerning rape trauma syndrome, where the testimony was relevant to assist the jury in assessing the victim's testimony and credibility; where it was not used as affirmative evidence to prove guilt [540-543]; and where it did not improperly bolster the victim's credibility [543]. O'CONNOR, J., dissenting, with whom LIACOS, C.J., joined.

There was no merit to a criminal defendant's contention that certain properly admitted expert testimony explaining aspects of the victim's behavior unfairly prejudiced him or denied him a fair trial. [543]. O'CONNOR, J., dissenting, with whom LIACOS, C.J., joined.

INDICTMENT found and returned in the Superior Court Department on August 18, 1989.

The case was tried before *Charles M. Grabau*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Benjamin H. Keehn*, Committee for Public Counsel Services, for the defendant.

*Marina Medvedev*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant, Kenneth Joseph Hudson, appeals from his convictions of four counts of a seven-count indictment charging rape of a child under the age of sixteen

years.[1] We granted the defendant's application for direct appellate review.

We summarize the evidence before the jury. At the time of trial the victim was sixteen years old and in the eleventh grade. The victim's mother married the defendant when the victim was approximately five years old, and from the age of five until nine, she was repeatedly raped by the defendant. She claimed that over twenty incidents of sexual abuse occurred during that four and one-half year period. On occasion the defendant threatened to kill the victim and her mother if the victim told of his actions.

The victim did not tell her mother about any of the incidents until just before the defendant and the victim's mother separated. During the time of the incidents, the victim went to the hospital "a lot" because of stomach pain. In addition, she suffered from recurring nightmares where she imagined that the defendant would kill her mother then force the victim to have sexual intercourse with him and kill her. The stomach pain and nightmares persisted until 1989.

On cross-examination, the defendant attacked the victim's credibility. The tenor of the questioning suggested that the victim's alleged abdominal pain was not evident until she began menstruating and intimated that the victim's abdominal pain was caused by irregularities in her menstrual cycle or other medical reasons. The defendant suggested further that the victim's difficulties with her mother's current boy friend caused her to run away from home.

The mother stated that the authorities at the schools the victim attended constantly informed her that the victim complained of stomachaches. According to her mother, doctors believed that the victim's stomachaches were "in her head." She said that, during the years that these incidents occurred, she noticed changes in the victim's behavior. At some point the victim ran away from home for five or six hours. The

---

[1]The defendant was acquitted on three counts charging rape of a child under the age of sixteen.

victim left a note stating that "she was tired of her night-mares and she was leaving."

Dr. Mark N. Webber, the victim's physician, stated that the victim's internal examination was similar to that of a sexually active adolescent. He observed no evidence of trauma, which would be as expected if the sexual activity occurred five or six years earlier. During a May, 1989, visit, Dr. Webber noted that the victim looked "very sad," was quiet, and would not make significant eye contact. Because it was the victim's fourth visit and he was unable to find any physical problem with the victim, Dr. Webber suggested she consult with a psychiatrist.

Dr. Karen Schwartz, a psychologist who qualified as an expert on sexually abused children, described posttraumatic stress disorder (PTSD). Dr. Schwartz stated that PTSD, as described in the Diagnostic and Statistical Manual of Mental Disorders (3d ed. rev. 1987), is a disorder primarily developed to describe situations where veterans would experience symptoms years after a traumatic episode. According to Dr. Schwartz the diagnosis of PTSD rests on four symptom categories. At the outset, there must be a traumatic event. Dr. Schwartz testified that sexual abuse could be a traumatic event. She stated that the degree of trauma has some correlation to how closely related the offending person is to the victim. Dr. Schwartz then described the other types of PTSD symptoms. First, there is a reexperiencing phenomenon where individuals may have memories that intrude into their daily lives. Reexperiencing phenomena could take the form of nightmares. The second category is a form of psychic numbing or avoidance of stimuli associated with the trauma. An example of psychic numbing includes a sexually abused adolescent who, years later, reveals the abuse but shows no emotion. The third category involves hypervigilance or hyper-arousal. In children and adolescents this could take the form of headaches or stomachaches. Dr. Schwartz noted that symptoms of the disorder are dependent on the developmental level of the person traumatized. At different ages, one could expect to see a different constellation of symptoms. In

response to a hypothetical question, Dr. Schwartz explained that abdominal pain is "not syndrome specific," because "it does [not] point to one specific syndrome more than another." She testified that more information on a patient's history and level of functioning would be needed. Dr. Schwartz did note that it would be a "red flag" of a number of different things including trauma. In taking a patient's history, Dr. Schwartz said that she would ask the patient whether she had been sexually abused. She further stated that the symptoms manifest themselves in different ways within the preschool population, school-age population, and the adolescent population. According to Dr. Schwartz people with PTSD sometimes will not exhibit symptoms until months or years after they experience the trauma. Dr. Schwartz noted that it is fairly typical that children delay reporting that they were sexually abused. On cross-examination, Dr. Schwartz admitted that, if a patient reports sexual abuse and exhibits various symptoms, her goal is to treat the patient and not to determine whether the patient was telling the truth. In her view, whether the victim was truthful was an appropriate inquiry to the legal arena but not for her purposes. She further testified that all symptoms are subjective. Dr. Schwartz also admitted that, because an individual exhibits certain symptoms, such as stomachaches, that does not automatically prove that she was the victim of sexual abuse. She testified that the symptoms could be caused by a variety of things and that, often times, the symptoms occur as part of a child's normal development. Dr. Schwartz did not connect her testimony to the victim or the defendant.[2]

The defendant argues that the judge erred in admitting expert testimony concerning the typical characteristics of sexually abused children. On appeal, the defendant raises three issues, concerning the expert testimony that: (1) the syndrome evidence describing the typical sexually abused child should not be admissible as affirmative evidence of the de-

[2]The fact that Dr. Schwartz treated the victim was mentioned during cross-examination and redirect examination of the victim's mother.

fendant's guilt; (2) the expert testimony was improper because it constituted opinion evidence which bolstered the victim's credibility; and (3) the admission of the syndrome evidence was prejudicial. We conclude that the judge did not abuse his discretion by admitting the expert testimony and affirm the convictions.

Prior to trial, a voir dire was conducted to determine whether an expert could testify on PTSD in a child rape case. Dr. Schwartz and Dr. Douglas Gallaway testified. At the conclusion of the voir dire, the judge noted that, although he had not made a final decision, he was leaning toward admitting the expert testimony. Another judge was assigned to the trial. The defendant filed a motion in limine concerning the expert testimony. Before ruling on the motion, the trial judge informed the parties he wished a voir dire of the expert. He instructed the prosecutor not to discuss the expert during his opening statement. After a voir dire of Dr. Schwartz on the third day of trial, she was permitted to testify as an expert.

1. The admission of expert testimony lies "largely in the discretion of the trial judge." *Commonwealth* v. *Maltais*, 387 Mass. 79, 93 (1982). We have held that expert testimony "is admissible if, in the judge's discretion, the subject is not within the common knowledge or common experience of the jury." *Commonwealth* v. *Francis*, 390 Mass. 89, 98 (1983).

This court has recently opined that courts have uniformly allowed expert testimony on the typical symptoms of sexually abused children because the information is beyond the common knowledge of jurors and of assistance in assessing a victim witness's testimony and credibility. *Commonwealth* v. *Dockham*, 405 Mass. 618, 629 (1989). In *Dockham*, the expert explained that sexually abused children "often delay disclosure of sexual abuse or make gradual disclosures, retract their statements, and repress the abuse." *Id.* at 628. The expert described behavioral signs and symptoms, such as, "sexualized play, knowledge of adult sexual functions, fears and anxieties related to body parts, people, and places involved in

the sexual abuse." In addition, the expert stated that "sexually abused children exhibit impaired trust, withdrawal, depression, guilt, shame, anxiety, and hypervigilance." *Id.* In *Commonwealth* v. *Mamay*, 407 Mass. 412, 421 (1990), we held that it was within the trial judge's discretion to admit expert testimony concerning rape trauma syndrome to explain the conduct of victims who returned to the office of the defendant physician after having been sexually assaulted by him.

There is a similar solidarity of judicial precedent in excluding the evidence to prove that the victim was in fact sexually abused. *State* v. *J.Q.*, 130 N.J. 554, 563-564 (1993), and cases cited.[3] "Courts rarely permit the testimony for the purpose of establishing substantive evidence of abuse, but allow it to rehabilitate the victim's testimony." *Id.* at 566. The critical factor, therefore, in determining admissibility of such evidence is its relevance to the issues in the case.

We do not accept the defendant's contention that Dr. Schwartz's testimony was used affirmatively to prove guilt. Dr. Schwartz did not directly refer to the victim or her symptoms. She testified generally about PTSD. The testimony was admissible to rebut the defendant's suggestions made during cross-examination that the victim was a troubled teenager, whose medical problems were related to menstruation, and whose unhappy home life could lead to false claims of rape. Dr. Schwartz did not state that the victim had been sexually abused nor did she ever posit that the de-

---

[3]But see *State* v. *Alberico*, 861 P.2d 192, 210 (N.M. 1993) (expert testimony on PTSD is probative of sexual abuse; reasoning that, because PTSD is valid scientific technique for identifying certain symptoms of abuse, "[a]llowing an expert to testify that PTSD symptoms are a common reaction to sexual assault for the purpose of rebutting the defense that the victim's reactions to the alleged incident are inconsistent with sexual assault is no different from allowing the expert to testify that the alleged victim's symptoms are consistent with sexual abuse"). Contrast *Commonwealth* v. *Dunkle*, 529 Pa. 168, 173 (1992) (expert testimony concerning typical behavior of sexually abused children not admissible because such testimony is neither generally accepted as diagnostic tool nor relevant evidence).

fendant was the abuser. Furthermore, on cross-examination, Dr. Schwartz admitted that merely because an individual exhibits certain symptoms of the disorder does not automatically prove that she was the victim ·of sexual abuse.

This case presents us with a fact pattern similar to *Commonwealth* v. *Dockham, supra.* There the expert testified to the typical symptoms of one sexually abused to explain one victim's behavior as well as his delayed disclosure of abuse. Similar to *Dockham,* the expert testimony here is permissible to explain the victim's postassault behavior and symptoms including her stomachaches and nightmares. Because there was no physical evidence of trauma, this case hinged on the weight the jury assigned to the testimony of the victim and the defendant. Although the victim's symptoms are not as striking as those of the victim in *Dockham,* the knowledge that they are frequently found among those suffering from PTSD was not information within the common understanding of jurors. As in *Dockham,* this information is relevant to assist the jury in assessing the victim's testimony and credibility. Although, as the dissent points out, the judge did not charge the jury that the expert testimony was not affirmative evidence of sexual abuse, no request was made for a limiting instruction and no objection was made to the charge on this ground.[4]

However, the judge did instruct the jury:

"You the jurors are not bound by the opinion of an expert. The experts cannot decide the case for you the jury. They cannot [usurp]; take away your fact finding function. They can, however, by their opinion assist you to find facts upon which you will decide the case. You must weigh the testimony of the expert as you would that of any other witness. You may reject it, you may reject the opinion if in your judgment the reasons given for it are unsound. You may accept it in whole. Or you

---

[4]The dissent also refers to the reference of the expert testimony by the prosecutor in his closing argument. The defendant did not object at trial to the argument on this basis.

may accept it in part and reject it in part. Depending upon the reasonableness or unreasonableness of the testimony of that individual."

We conclude that the judge did not abuse his discretion by admitting Dr. Schwartz's testimony because that information was "beyond the common knowledge of jurors and of assistance in assessing a victim witness's testimony and credibility." *Commonwealth* v. *Dockham, supra* at 629.

2. "It is a fundamental principle that 'a witness cannot be asked to assess the credibility of his testimony or that of other witnesses.'" *Commonwealth* v. *Triplett,* 398 Mass. 561, 567 (1986), quoting *Commonwealth* v. *Dickinson,* 394 Mass. 702, 706 (1985). In the defendant's view, Dr. Schwartz's testimony, especially relating to stomachaches, served to endorse the credibility of the victim. See *Commonwealth* v. *Montanino,* 409 Mass. 500, 504 (1991). Dr. Schwartz never explicitly or impliedly rendered an opinion as to the truthfulness of the victim or to the general veracity of sexually abused children. In fact, she testified that whether a child was truthful was not for her determination. We conclude, therefore, that Dr. Schwartz's testimony did not improperly bolster the victim's credibility.

3. Because we hold that the expert testimony was properly admissible to explain aspects of the victim's behavior, we reject the defendant's final contention that its admission unfairly prejudiced the defendant and denied him a fair trial.

*Judgments affirmed.*

O'CONNOR, J. (dissenting, with whom Liacos, C.J., joins). The court concludes that the psychologist's description of posttraumatic stress disorder (PTSD) "was admissible to rebut the defendant's suggestions made during cross-examination that the [alleged] victim was a troubled teenager, whose medical problems were related to menstruation, and whose unhappy home life could lead to false claims of rape." *Ante*

at 541. Presumably, the defendant's suggestions to which the court refers were contained in defense counsel's questions rather than in the alleged victim's testimony. It also appears that the "medical problems" to which the court refers were stomachaches. The court further concludes that, "[s]imilar to [*Commonwealth* v. *Dockham*, 405 Mass. 618 (1989)], the expert testimony here is permissible to explain the [alleged] victim's postassault behavior and symptoms including her stomachaches and nightmares. . . . As in *Dockham*, this information is relevant to assist the jury in assessing the [alleged] victim's testimony and credibility." *Ante* at 542. The court does not identify the postassault behavior to which it refers unless perhaps it means to characterize the alleged victim's nightmares as behavior, nor does it identify or specify what, if any, symptoms it may have in mind other than stomachaches and nightmares.

Stomachaches and nightmares do not constitute behavior, and therefore *Commonwealth* v. *Dockham,* supra, on which the court so heavily relies, and *Commonwealth* v. *Mamay*, 407 Mass. 412 (1990), on which the court also relies, *ante* at 540-541, both of which deal only with a victim witness's behavior, do not support the court's conclusion that the PTSD testimony in this case was properly admitted.

In *Dockham*, the defendant challenged the admission in evidence of a psychiatrist's testimony which the court described as follows. "Dr. Brant testified that sexually abused children often delay disclosure of sexual abuse or make gradual disclosures, retract their statements, and repress the abuse. The behavioral signs and symptoms she described include sexualized play, knowledge of adult sexual functions, fears and anxieties related to body parts, people, and places involved in the sexual abuse." *Dockham*, *supra* at 628. *Dockham* involved expert testimony about a typical child victim's behavior pattern which, if not understood by the jury, might reasonably have led the jury to disbelieve the child's testimony. For example, in that case, the expert informed the jury that a child's delay in reporting sexual abuse is not unusual, thereby disabusing the jurors of any misperception

they might reasonably have had that, if the sexual abuse had occurred as the child testified, it would have been more promptly reported. The court held that the evidence was properly admitted "because the information is beyond the common knowledge of jurors and of assistance in assessing a victim witness's testimony and credibility." *Id.* at 629. It is abundantly clear from the five cases cited by the court in *Dockham*, with parenthetical summaries of the holdings, that the expert testimony was held admissible because it explained the alleged victim's behavior that, if left unexplained, might unfairly have led the jury to disbelieve him or her. *Id.* at 629-630.

*Commonwealth* v. *Mamay*, 407 Mass. 412 (1990), is no more supportive of the court's holding in this case than is *Commonwealth* v. *Dockham, supra.* The rationale of the two cases is the same. In *Mamay, supra* at 421, an expert in the field of rape and sexual assault syndrome was allowed to testify that not all victims of rape and sexual assault will report the event immediately and that often the first person they will tell is someone close to them. The expert also said that, in the context of a trust relationship, such as a doctor-patient relationship which was the relationship between the alleged victim and the defendant in *Mamay*, some victims may return to the trusted relationship for further contact with the perpetrator of the assault. In affirming the judgment, the court held that "[i]t was within the judge's discretion properly to conclude that it was beyond the jury's common knowledge to know why a victim would return to a situation in which she had been sexually assaulted or raped." *Id.* In *Mamay*, as in *Dockham*, the court held that expert testimony was admissible to disabuse the jury of the idea, reasonably accepted in the absence of contrary information, that the alleged victim's conduct was inconsistent with the claims the victim was making on the witness stand.

The expert testimony in *Dockham* and *Mamay* was clearly relevant to the critical question of the credibility of the key witnesses, and was therefore held admissible. Neither *Dockham* nor *Mamay* suggests, however, that PTSD testimony

should be admissible to rebut suggestions in a cross-examiner's questions put to an asserted sexual abuse victim that his or her stomachaches and nightmares may have been caused by events or conditions unrelated to sexual abuse. Indeed, rebuttal evidence ordinarily is admitted only to rebut other evidence. The court's conclusion that the PTSD testimony in this case was properly admitted cannot fairly be justified as following from *Dockham* and *Mamay.*

The court quite properly recognizes the "solidarity of judicial precedent in excluding [PTSD] evidence to prove that the victim was in fact sexually abused." *Ante* at 541, quoting *State* v. *J.Q.*, 130 N.J. 554, 556 (1993). The court, nevertheless, holds the PTSD evidence admissible in this case to "rehabilitate the victim's testimony." *Ante* at 541. The rehabilitation is said to occur as a result of the PTSD evidence rebutting certain suggestions made by defense counsel in the course of cross-examining the alleged victim, and by explaining the alleged victim's "behavior" and symptoms, thereby assisting the jury's assessment of the alleged victim's credibility. Of course, if PTSD evidence were admissible to prove that a complaining witness had been sexually abused, the evidence would also tend to prove that the witness's complaint was truthful. However, as the court agrees, PTSD evidence is not admissible to prove that sexual abuse occurred. It is reasonable to inquire, then, how could the PTSD evidence have legitimately assisted the jury in assessing the alleged victim's credibility in this case. The court's opinion is bereft of explanation.

The psychologist testified that stomachaches and nightmares are typical symptoms of a child who has been sexually abused *or has suffered other forms of trauma.* She said, "There are a number of organic things that can cause stomachaches, and not being a physician, I shouldn't testify about that. In the psychological or psychiatric domain, you see stomachaches from school phobia, from separation anxiety. In young children, from stress and anxiety. Something can be going on in school or in the family. People often show their anxiety and their stress through bodily symptoms." The

psychologist also testified that "[n]ightmares is another red flag which tends to raise questions, at least in my mind, of some traumatic experience, or some highly stressful experience." The psychologist's testimony shed no light whatsoever on whether any suggestion that may have come from defense counsel that the alleged victim was a troubled teenager whose medical problems were related to menstruation, and whose unhappy home life could lead to false claims of rape, was accurate or inaccurate. The PTSD testimony did not rebut any suggestions that defense counsel may have made, and it gave the jury no information whatsoever tending to support the alleged victim's credibility.

The court agrees that the PTSD testimony was not admissible to prove that the alleged victim was sexually abused, and it is clear that the evidence did not rebut any suggestions made during cross-examination of the alleged victim. The PTSD evidence was of no legitimate assistance to the jury in assessing witness credibility or otherwise. The defendant objected to the evidence. Its admission was erroneous, and cannot properly be deemed harmless because it cannot fairly and confidently be said that the jury did not rely to some degree on the PTSD evidence in arriving at their verdict. In his summation to the jury, the prosecutor argued, "Ladies and gentlemen, there's been testimony about the nightmares, about the pain, about depression. And if those things are symptoms with the disclosure, you get a picture. A picture of a child who was raped and who has finally found the time to come in." Then, after hearing this invitation to use the PTSD testimony as affirmative evidence of abuse, the jury heard from the judge in his final instructions that, while they were not bound by the opinions of experts, experts "can . . . by their opinion assist [the jury] to find facts upon which [the jury] will decide the case." It was made clear to the jury that, if they were to accept the psychologist's testimony "in whole" or "in part," they could use her opinion without limitation in determining the guilt or innocence of the defendant. It makes no difference whether the jury may have used the erroneously admitted PTSD evidence as affirmative evidence

of sexual abuse, or only as supportive of the alleged victim's credibility. It also is of no consequence that the defendant did not ask for a limiting instruction or object to the instruction. *Ante* at 542. It is enough that the jury may have relied on inadmissible evidence, admitted over objection, to the detriment of the defendant. The convictions should be reversed and the case remanded for retrial.