COMMONWEALTH vs. HARRISON RATHER.

No. 92-P-1066.

Plymouth. September 21, 1993. - August 16, 1994.

Present: SMITH, KAPLAN, & IRELAND, JJ.

*Child Abuse. Rape. Witness*, Expert, Credibility. *Evidence*, Expert opinion, Sexual conduct, Credibility of witness. *Error*, Harmless.

Discussion of cases considering the admissibility of expert testimony in child sexual abuse cases relating to victims' patterns of disclosure of abuse. [147-148]

At the trial of indictments for sexual abuse of children, the judge incorrectly admitted certain testimony of an expert witness where, in the circumstances, the jury reasonably could have concluded that the witness had implicitly rendered an opinion as to the general truthfulness of the alleged victims [148-149]; however, the error was harmless in light of the other very strong evidence corroborating the victims' testimony [149-150].

The court suggested guidelines for trial judges considering the admissibility of expert testimony in sexual abuse cases relating to victims' patterns of disclosure of abuse. [150-151]

INDICTMENTS found and returned in the Superior Court Department on October 22, 1990.

The cases were tried before *Cortland A. Mathers*, J.

*Eric Brandt*, Committee for Public Counsel Services, for the defendant.

*John E. Bradley*, Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was charged in six indictments with the following offenses: three acts of forcible rape of a child, two acts of assault and battery, and one act of assault and battery by means of a dangerous weapon. He was convicted by a jury of all the charges.[1] On appeal, the defendant

---

[1]The three indictments charging assault and battery alleged that those offenses were also committed against the three children. Those indictments

claims that the judge committed reversible error by allowing in evidence expert testimony concerning the patterns of disclosure by children who are victims of child sexual abuse.

Three young sons of the defendant were the victims named in the three indictments that charged him with forcible rape. The offenses were alleged to have occurred sometime during the period between April 1 and September 19, 1987. At the time of the offenses alleged in the indictments, the oldest victim was nine years old (thirteen at the time of trial), the next oldest was six and seven years of age (ten at the time of trial), and the youngest was four (eight at the time of trial).

We summarize the evidence before the jury. Each of the victims testified, in some form, that the defendant repeatedly had anal intercourse with him during the period. Each also claimed to have seen the defendant do the same to one or both of the others. The oldest son, whom we will call Andrew, not only testified as to sexual abuse but also stated that the defendant physically abused him, including burning his arm with a lighted cigarette. Further, Andrew testified that the defendant was "drunk" a lot and invariably was drinking when he abused Andrew and his brothers. In addition, the defendant showed pornographic movies to the victims.

The next oldest son, whom we call Ben, also testified to physical and sexual abuse. He testified also to the defendant's drinking of alcohol and forcing Ben and his brothers to watch pornographic movies. The youngest son also testified to physical and sexual abuse.

The victims were subject to a vigorous cross-examination in regard to the fact that they did not disclose, at the time it was happening, the sexual and physical abuse they were suffering at the hands of the defendant. They gave as their reason that the defendant threatened to kill them if they told anyone about the abuse. They were aware that the defendant kept several guns in the apartment where they lived.

Other Commonwealth witnesses included a social worker who had known the defendant for about twenty-five years.

were placed on file and the defendant's convictions on those offenses are not at issue in this appeal.

She testified that in September, 1987, the victims came to live with her. Although initially at her home on a temporary basis, they remained living with her up to and including the time of the trial. With respect to the victims' complaints, the witness testified that within a few weeks of their arrival, Andrew told her that the defendant had put his penis in his "bum" and, later in 1987, the youngest victim told her the same thing. Ben, however, made no such complaint at that time or in 1988. The witness testified that she noticed burn marks on Andrew's arms.

A person who had known the defendant for eight or nine years testified that he had seen the defendant slap Andrew "pretty hard" in the face. He also stated that he was present when the defendant showed a pornographic movie to the victims. The witness also testified that the defendant would often sleep with the victims. Another witness, who lived with the defendant from April or May to September, 1987, testified that she saw the defendant physically abuse Andrew and Ben. She also stated that she once saw the defendant having anal intercourse with Andrew. Further, she testified that the defendant once made reference to his sons as his "harem."

The issue raised on appeal arose in the following manner. On the second day of the trial the prosecutor informed the judge that she had learned that defense counsel intended to call as witnesses two therapists who had evaluated the victims for sexual abuse in 1988 and to whom the victims had denied any such abuse. The prosecutor stated that if defense counsel did call the therapists, she wished to cross-examine them as experts on "patterns of disclosure" by child victims of sexual abuse. The prosecutor claimed that such testimony was admissible and cited *Commonwealth* v. *Dockham*, 405 Mass. 618, 629 (1989), in support of her argument. Defense counsel disagreed and claimed that the *Dockham* decision had been overruled sub silentio in *Commonwealth* v. *Montanino*, 409 Mass. 500, 504 (1991). After listening to counsel the judge postponed his decision until the therapists testified.

After the Commonwealth rested its case, the defendant called one of the therapists as his first witness. She testified on direct examination that she was employed by a private mental health clinic. In July, 1988, she saw the oldest child on two occasions for the purpose of evaluating whether he had been sexually abused. He told her that the defendant had touched him on his "bum" with his finger and also touched him on his genitals. He denied, however, that the defendant had penetrated his anus with his penis. The victim did not tell the witness that he had been burned. The witness also testified that she interviewed Ben, the next oldest victim, who told her that he had never been sexually abused by the defendant.

Before cross-examination of the witness commenced, the judge held a hearing on the prosecutor's motion to have the therapist qualified as an expert and to cross-examine her on "patterns of disclosures" by child victims of sexual abuse. The judge qualified the witness as an expert.[2] The prosecutor then outlined the series of questions she planned to ask the witness. The judge ruled that he would permit the proposed testimony, citing *Commonwealth* v. *Dockham, supra.* He added, however, that he would not allow any questions to "become specific as to the[se] child[ren]."

Following the judge's ruling, the prosecutor proceeded to question the therapist. Her first questions concerned the witness's examination of Ben. The witness testified that Ben was "uncomfortable" when the witness asked him about "touches." After a few other questions about her examination of Ben, the prosecutor then elicited the challenged testimony from the witness, over the defendant's objections. The pertinent portion of the testimony is as follows:

> Q. "Now, I want to ask you, Ms. Tempesta, I want you to assume for a moment, without reference to this case in particular but drawing on your clinical background in general, I want you to assume for a moment

[2]The defendant objected to the witness being qualified as an expert. He does not raise any issue on appeal as to the witness's qualifications.

that you have a young child under the age of ten who has been physically and sexually abused by a parent and who has been threatened with severe bodily injury if the child disclosed. And I would like you to take that assumption for the basis of the next three questions.

[DEFENSE COUNSEL]: "Object to the assumption.

THE COURT: "Allow it."

. . .

The prosecutor then repeated the question as follows:

Q. "Ms. Tempesta, I would like you for the following three questions to make an assumption. Assume that you have a child under the age of ten who has been sexually abused, physically abused, and threatened with severe bodily harm if the child discloses that abuse. My first question is, do you have an opinion to a reasonable degree of psychological certainty as to whether it is uncommon for such a child to fail to disclose that abuse for a substantial period of time?

. . .

A. "I think a child who has been sexually abused and who has been threatened with bodily harm would have a very difficult time disclosing the abuse at all. And quite often children who have experienced that type of abuse and those types of threats very often do not disclose. When they do disclose they normally disclose in stages.

. . .

Q. "And that would lead me then to my second question, which is, do you have an opinion to a reasonable degree of psychological certainty as to whether such a child might disclose gradually over a long period of time?

. . .

A. "I think a child would gradually disclose over a long period of time. Based on what the response is of

their disclosure, they may give one piece of information and wait to see how it is dealt with, see what the results are, and then give a little more and wait and see if they are going to be harmed in any way and so forth.

. . .

Q. "My third question is this. Do you have an opinion to a reasonable degree of psychological certainty as to whether such a child might actually deny being abused at all, especially if the child is asked that question by a person the child does not know well?

. . .

A. "I think that the majority of children in that situation do not disclose abuse. The majority do not disclose at all."

After the witness testified, defense counsel asked the judge if his ruling would be the same with respect to the second therapist that defense counsel planned to call as a witness. The judge stated that he would allow the prosecutor to ask the second therapist the same type of questions she had asked the first therapist. Defense counsel never called the second therapist as a witness.[3]

---

[3]The defendant called other witnesses besides the therapist. After the Commonwealth rested, the defendant called as a witness a police detective experienced in investigating sexual abuse. He testified that he interviewed all of the victims on December 8, 1987. He stated that Andrew told him that the defendant had hurt his "bum" by spanking it with his hand and that was all he had done. The detective asked Andrew whether the defendant had ever touched him sexually. Andrew said that he had not. The other two victims also denied that any sexual abuse had occurred.

Two years later, in 1990, the detective interviewed the victims once again. At that time, Andrew and the youngest victim told him that the defendant had had anal intercourse with them. Ben told the witness that the defendant had sexually touched him but he specifically denied that anal intercourse had occurred. Later, in August, 1990, Ben told the detective that anal intercourse had taken place.

The defendant testified in his own behalf. He denied that any sexual activity had taken place. He admitted, however, keeping guns in the house, getting drunk "once in a while," and spanking his children with a belt and his hand.

In rebuttal, the Commonwealth called as a witness the mother of the victims. She stated that she had lived with the defendant prior to the time

In her closing argument, the prosecutor referred to the testimony given by the therapist during cross-examination. She stated in relevant part,

> "Isn't it significant what the therapist said. The therapist who saw these children two times, I believe, two times, do you really think the children are going to tell her. . . .
>
> "And you heard her opinion. She is qualified to testify as an expert as to how children disclose. She says it is not uncommon at all for a child who has been physically and sexually abused to not disclose or to disclose gradually. *And isn't that what we have?*" (Emphasis added.)

Following the argument, defense counsel made an objection to that portion of the prosecutor's argument. The judge again overruled the objection.

In his instructions to the jury the judge gave the following instructions in regard to expert witnesses:

> "So you get an expert, someone who qualifies as an expert and has expertise in an area that we would not normally expect the jury to have expertise in, may testify to matters of opinion, expert opinion, and then support that opinion with further evidence of the whys and wherefores of the opinion.
>
> "Your power with regard to an expert witness is exactly the same as it is with regard to a lay witness. You may accept what an expert witness says, you may accept the opinion of an expert witness, you may reject the opinion of an expert witness, you may accept it in part and reject it in part. It's entirely up to you to deal with that evidence as you are persuaded to deal with it. But it is offered because, in the general run of things,

covered in the indictments. She testified that she saw the defendant threaten the victims with a knife and a gun. The witness also testified that the defendant would hold a lighted cigarette near the victims. Further, he would punch the two oldest victims with his fist on occasions.

you would not be expected to have the special knowledge that the expert has."

The issue in this case — the admission in child abuse cases of expert testimony relating to patterns of disclosure by the victims — has been the subject of several cases in recent years. Generally, expert testimony is admissible "whenever it will aid the jury in reaching a decision, even if the expert's opinion touches on the ultimate issues that the jury must decide." *Commonwealth* v. *Dockham*, 405 Mass. at 628, quoting from *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982). In child sexual abuse cases, "courts have uniformly allowed expert testimony on the typical symptoms of sexually abused children because the information is beyond the common knowledge of jurors and of assistance in assessing a victim witness's testimony and credibility." *Commonwealth* v. *Hudson*, 417 Mass. 536, 540 (1994). Thus, experts were allowed to testify "that it is fairly typical that children delay reporting that they were sexually abused," *id.* at 539, and that "sexually abused children often delay disclosure of sexual abuse or make gradual disclosures . . . ." *Commonwealth* v. *Dockham*, *supra* at 628.

There is, however, a limitation on an expert's testimony — "[i]t is a fundamental principle that 'a witness cannot be asked to assess the credibility of his testimony or that of other witnesses.' " *Commonwealth* v. *Triplett*, 398 Mass. 561, 567 (1986), quoting from *Commonwealth* v. *Dickinson*, 394 Mass. 702, 706 (1985). In *Commonwealth* v. *Montanino*, 409 Mass. at 501-503, the defendant was tried on two indictments charging him with unnatural sexual intercourse with a fifteen year old male youth. A Commonwealth witness, a police officer, on cross-examination admitted that there were several inconsistencies between the victim's trial testimony and the comments that he had made to the witness in describing the first incident. On redirect examination, the witness was allowed to testify that " 'most' victims eventually provided more details regarding the assault than they initially revealed." *Id.* at 502-503. The Court held that the admission in evidence of that testimony was error because the

witness's testimony "relating to the credibility of 'most' sexual assault victims would be taken by the jury as [the witness's] endorsement of [the complainant's] credibility." *Id.* at 504. Here, the defendant argues that *Montanino* controls the matter.

We agree with the Commonwealth that the witness never *explicitly* rendered an opinion as to the truthfulness of the victims or otherwise endorsed their credibility. But the *Dockham*, *Hudson*, and *Montanino* decisions teach that the line between proper testimony as to patterns of disclosure of child sexual abuse victims and improper testimony constituting endorsement of the credibility of a victim-witness is indeed a narrow one.

In this case, that line was crossed. Therefore, we hold that it was error to admit the witness's testimony about the pattern of disclosure of child sexual abuse victims. The reasons for our decision are (1) the witness's role in relation to the victims — she was not an independent expert but rather had evaluated them for sexual abuse[4]; (2) the sequence of ques-

---

[4] A serious problem is created when the witness who is asked for an opinion concerning the general characteristics of sexually abused children has also seen the alleged victim in his or her professional capacity. The danger is that the jury will believe that the witness is endorsing the credibility of the alleged victim. See *Commonwealth* v. *O'Brien*, 35 Mass. App. Ct. 827, 832-834 (1994), where the expert witness who gave an opinion in regard to the general behavioral characteristics of sexually abused children also served as the victim's therapist. Although the court held that the testimony was properly admitted, it pointed out that "[t]here are cases where the proffered expert testimony itself approaches so closely the credibility of the alleged victim that it is best excluded." *Id.* at 832 n.6. Also see *Commonwealth* v. *Swain*, 36 Mass. App. Ct. 433, 444-445 (1994), where the court noted that "[n]otwithstanding the theoretical right of a qualified fresh complaint witness also to testify to the general characteristics of sexually abused children . . . , prosecutors would be well advised to avoid such juxtaposition and, if it occurs, trial judges should be alert to its considerable prejudicial potential."

In *Commonwealth* v. *Hudson*, 417 Mass. at 538-539 & n.2, the expert on sexually abused children also had treated the victims. However, the Court noted that she did not testify in the dual role and "did not directly refer to the victim or her symptoms"; nor did she explicitly or implicitly render an opinion that bolstered the victim's credibility. *Id.* at 541, 543.

However, where the expert has seen the victims, refers to them, and also gives an opinion, the jury may believe that the witness is commenting on

tions focusing directly on one of the victims, leading up to the hypothetical questions; (3) the wording of the hypothetical questions concerning "a young child under ten," a reference that fit all three victims, see *Commonwealth* v. *Swain*, 36 Mass. App. Ct. 433, 445 n.14 (1994); and (4) the prosecutor's argument to the jury, which made direct reference to the witness's testimony and the victims. Based on all of these circumstances (see note 4, *supra*), we hold that the jury could reasonably have concluded that the witness had implicitly rendered an opinion as to the general truthfulness of the victims. See *Commonwealth* v. *Montanino*, 409 Mass. at 504 ("[w]hile the proposed testimony fell short of rendering an opinion on the credibility of the . . . [victims] before the court, we see little difference in the final result. It would be unrealistic to allow this type of . . . testimony and then expect the jurors to ignore it when evaluating the credibility of the complaining [witness]," quoting from *Commonwealth* v. *Ianello*, 401 Mass. 197, 202 [1987]).

Our inquiry does not stop here. We now consider whether the error in admitting the testimony was harmless. An error is harmless "[i]f . . . the conviction is sure that the error did not influence the jury, or had but very slight effect . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983), quoting from *Kotteakos* v. *United States*, 328 U.S. 750, 764-765 (1946). See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).

Here, various aspects of the victims' testimony were corroborated by other witnesses. One witness testified that she saw the defendant engage in anal intercourse with one of the

---

the credibility of a particular victim that he or she has examined. In fact, this court has recently suggested the desirability of utilizing for such types of opinion testimony only those child sexual abuse experts who have had no prior connection with the victims in the case or their families. See *Commonwealth* v. *McCaffrey*, 36 Mass. App. Ct. 583, 593-594 (1994).

victims. Other witnesses testified that the defendant showed pornographic movies to the victims. Witnesses corroborated the victims' testimony about the physical abuse they suffered at the hands of the defendant. The fact that the defendant kept guns in the house and was a heavy drinker was corroborated by the defendant himself. In the face of this testimony, we conclude that the admission in evidence of the witness's testimony concerning the patterns of disclosure was harmless.

It has become increasingly apparent that the trial courts are flooded with cases involving the problem of child abuse, including sexual abuse. We are aware that the issue under review in this matter will come up often before trial judges. Because the line between proper and improper testimony is so narrow, we offer some suggestions in order to make sure that the line is not crossed.

The suggestions are as follows:

> 1. If either side plans to offer expert evidence as to patterns of disclosure of child sexual abuse victims, the judge should be notified early in the proceedings.

> 2. The judge should hold a voir dire at which the expert answers the proposed questions.

> 3. If the judge allows the testimony, the witness should be advised not to render an opinion as to the credibility of the particular victim's testimony or any portion of it or as to the general veracity of sexually abused children.

> 4. At the conclusion of the witness's testimony and again during the judge's final instructions, the judge should instruct the jury in regard to the role of experts. The judge should instruct the jury on request that the expert testimony is not affirmative evidence of sexual abuse and that the expert did not assess the credibility of the particular victim in this case.

> 5. The proponent of the testimony should be very careful not to imply in the closing argument that the expert

vouched for the credibility of the particular victim before the court.

These are only suggestions. Obviously, we leave it to the common sense of the trial judge as to whether the testimony should be admitted and what instructions he or she believes are necessary to give to the jury.

*Judgments affirmed.*