COMMONWEALTH *vs.* ERNEST J. MALCHIONNO.

No. 97-P-1701.

Plymouth. December 18, 1998. - June 4, 1999.

Present: KASS, DREBEN, & SPINA, JJ.

*Child Abuse. Rape. Witness,* Expert, Credibility. *Evidence,* Expert opinion,
  Credibility of witness, Opinion.

At the trial of an indictment alleging sexual abuse of a child, the judge did not
  abuse her discretion in concluding that a social worker had sufficient
  education, training, experience, and familiarity with the subject matter of
  sexual abuse to qualify as an expert [76], and the witness's opinion
  testimony did not, in the circumstances, constitute impermissible vouching
  for the credibility of the victim and another witness [76-78].
At the trial of a criminal case, the judge's instructions on credibility, including
  inconsistent statements of witnesses, were adequate. [78]

INDICTMENT found and returned in the Superior Court Depart-
ment on August 2, 1994.

The case was tried before *Margaret R. Hinkle,* J.

*Carlo A. Obligato,* Committee for Public Counsel Services,
for the defendant.

*Kelly-Anne DeFao,* Assistant District Attorney, for the Com-
monwealth.

DREBEN, J. This is yet another case where the difficult line
must be drawn between permissible and impermissible opinion
testimony in a child sexual abuse case. See *Commonwealth* v.
*Richardson,* 423 Mass. 180, 186 (1996). Here we conclude the
challenged opinion testimony was admissible.

The defendant was convicted of forcible rape of a child (G. L.
c. 265, § 22A). At trial, the victim, then nineteen, claimed that,
when she was between the ages of five and nine, the defendant,
her stepfather, raped her multiple times and also forced her to
commit fellatio. He hit her with a whip and frightened her, say-
ing that if she told anybody, she would never see her mother

again because the Department of Social Services would take her away as they had when she was little. The victim's sister, twenty-one at the time of trial, testified that the defendant raped her during the same period. Her testimony was admitted for the limited purpose of showing a common pattern.

The defendant denied having had any improper contact with either the victim or her sister. He laid stress on the delay in revealing the rapes — they were disclosed five years after the defendant left the household[1] — and on prior inconsistent statements made by the two sisters. To this end, the defendant called as a witness, among others, Catherine Key, a Probate Court probation officer. In 1986, she was a social worker working as an investigator of sexual abuse for the Department of Social Services. Her function was to conduct ten-day investigations to determine whether there was reasonable cause to support an allegation of abuse or neglect. Key had received training "in how to interview alleged victims of sexual abuse."

When the defendant sought to question Key concerning allegations of the victim's sister in 1986, the Commonwealth objected. In overruling the objection, the trial judge warned defense counsel that, if he made the inquiry, he would be "likely to end up in a situation where matters will be permitted in court which are prejudicial to the defendant."

Key testified that she had interviewed the victim's older sister in June of 1986, and, at that time, the sister had denied that the defendant had had sexual intercourse with her although she stated that he had fondled her breasts and vagina.[2] Key, on another occasion, heard the victim's response to a question from her mother in which the victim denied that she had been abused by the defendant.[3]

To rehabilitate the witnesses in the face of the denial in 1986 to Key, an experienced investigator of sexual allegations, the

---

[1]The victim testified that once or twice during this period the defendant drove by the house in his van.

[2]On cross-examination Key testified that the reason stated to her by the sister for coming forward in 1986 with the allegation that her breasts and vagina had been touched by the defendant was that her mother was taking a trip and she was afraid of what would happen if her mother was not there to protect her.

[3]On cross-examination Key testified that, while the victim had denied that she had had sexual intercourse with the defendant, when she told her mother this in Key's presence, "[s]he had her head down. Her hair was draped partly over her face and it was a very, very low voice that she said 'No' in."

Commonwealth, after establishing that Key had "done sexual abuse for 20 years," engaged in the following questioning:

THE PROSECUTOR: "[I]n your experience is it common for young girls to hide incidents of sexual abuse against them?"

DEFENSE COUNSEL: "Objection."

THE JUDGE: "Overruled."

THE WITNESS: "Is it common for them to hide?"

THE PROSECUTOR: "Not to disclose it?"

THE WITNESS: "It is very common."

DEFENSE COUNSEL: "Objection."

THE JUDGE: "Overruled."

THE PROSECUTOR: "And is it common for them to deny it if asked directly?"

THE WITNESS: "It is also not unusual for them to deny it."

DEFENSE COUNSEL: "Objection. Move to strike."

THE JUDGE: "Overruled."

THE PROSECUTOR: "And is one of those reasons that they were afraid."

THE WITNESS: "One of those could be that they were afraid."

THE PROSECUTOR: "Or that they're embarrassed?"

THE WITNESS: "That's true."

THE PROSECUTOR: "Or afraid of some consequences if they say something?"

THE WITNESS: "That's true."

After additional examination of Key by both counsel, the defense moved for a mistrial. In denying the motion, the judge found that the witness

"was sufficiently experienced and trained in the field of sexual abuse investigation to render an opinion with regard to the questions that were asked. And I find that the questions that were asked on direct examination served as an appropriate predicate for questions asked on cross-examination. . . ."

On appeal the defendant takes issue with these conclusions. He argues that Key was not qualified as an expert and that her testimony amounted to improper vouching for the veracity of the Commonwealth's two witnesses.

"A trial judge's decision on a witness's qualifications to testify as an expert will rarely be overturned on appeal." *Commonwealth* v. *Allen*, 40 Mass. App. Ct. 458, 468 (1996). Here, not only was Key a social worker, a profession requiring substantial education, but she had also been trained in questioning victims of sexual abuse and had investigated sexual abuse cases for twenty years. The judge did not abuse her discretion in concluding that Key had "sufficient 'education, training, experience and familiarity' with the subject matter of the testimony" to qualify as an expert. *Commonwealth* v. *Richardson*, 423 Mass. at 183 (citations omitted).

More difficult is the question whether the opinion testimony constituted impermissible vouching for the credibility of the witnesses. While Key did not explicitly link her opinion to the experience of the child, she testified both as a direct witness and as an expert, thus creating more of a danger of implicit vouching than where there is no link between the expert and the victim. See *id.* at 186.

By placing Key on the stand, the defendant brought out that the girls in 1986 had an opportunity to report the rapes. Not only did they not do so, but they in fact denied that the rapes had occurred. The Commonwealth thus "had a serious need to rehabilitate its primary witness[es], a need which was created by [the defendant's proffering of Key's testimony.]" *Commonwealth* v. *Richardson*, 423 Mass. at 187. See *Commonwealth* v. *Moure*, 428 Mass. 313, 320 (1998). Key's expert opinion that delay is not unusual and is, in fact, common (a matter testified

to by experts in many of the cases, e.g., *Commonwealth* v. *Dockham*, 405 Mass. 618, 628-629 [1989]; *Commonwealth* v. *Montanino*, 409 Mass. 500, 502-503 [1991]) tended to rehabilitate the Commonwealth's witnesses by countering the inference that the victim's long silence suggested that the rapes were a later invention. See *Commonwealth* v. *Richardson*, 423 Mass. at 187.

Citing *Commonwealth* v. *Rather*, 37 Mass. App. Ct. 140, 142-149 (1994), the defendant points out that there opinion evidence from a therapist who had evaluated the children for sexual abuse was held improper — although the error was deemed harmless — despite the Commonwealth's need to rehabilitate its witnesses. The therapist had testified for the defense that the victims had denied abuse. The questions to her on cross-examination by the prosecutor, however, were hypotheticals concerning "a young child under the age of ten who has been physically and sexually abused by a parent and who has been threatened with severe bodily injury if the child disclosed," *id.* at 144, a description that fit all three victims. *Id.* at 149. See *Commonwealth* v. *Federico*, 425 Mass. 844, 850-851 (1997). Moreover, this court, in reaching the decision that the opinion testimony was improper, was influenced by the prosecutor's argument to the jury, which referred to the fact that the therapist had seen the children and made "direct reference to the witness's testimony and the victims." *Commonwealth* v. *Rather*, *supra* at 149. Here, the prosecutor wisely refrained from adverting to the expert testimony in his closing argument.

While some of the circumstances in this case are similar to those in *Commonwealth* v. *Rather*, *supra* at 148-149, the differences are sufficient to support the conclusion that there was no error in the admission of Key's opinion. The other cases upon which the defendant places heavy reliance are *Commonwealth* v. *Montanino*, 409 Mass. 500, and *Commonwealth* v. *Richardson*, 423 Mass. 180. In *Montanino*, the opinion testimony related to the specific interview process the police officer expert usually engaged in, and hence was more closely tied to the particular victim-witness. It is not clear that the court found error in the admission in *Richardson*, see *id.* at 186, and, in any event, the defense witness there was a fresh complaint witness, where the danger of implicit vouching was termed "particularly" dangerous. *Ibid.* See *Commonwealth* v. *Brouillard*, 40 Mass. App. Ct. 448, 451 (1996). While the question is close, we conclude there

was no abuse of discretion in the admission of Key's opinion testimony.

The other contention of the defendant that, despite his request, the trial judge gave insufficient instructions concerning inconsistent statements made by a witness is without merit. In view of her instructions on credibility, taken as a whole, her short discussion of previously differing testimony, set out in the margin,[4] was adequate.

*Judgment affirmed.*

---

[4]"Additionally, in assessing credibility you may consider any earlier statements made by a witness that differ from the testimony he or she gave you during the trial. And you may also consider evidence, if any, of a witness's earlier statements that are consistent with his or her testimony before you. You may also take into account a witness's frankness or lack of frankness while testifying, the reasonableness or unreasonableness of the testimony, the probability or improbability of that testimony, and the degree of intelligence demonstrated by the witnesses who testified before you."