COMMONWEALTH vs. JOHN POWERS.

No. 92-P-1400.

Suffolk. October 15, 1993. - February 17, 1994.

Present: DREBEN, FINE, & GILLERMAN, JJ.

*Evidence*, Fresh complaint, Credibility of witness, Sexual conduct. *Witness*, Credibility.

At the trial of an indictment for indecent assault and battery upon a child under the age of fourteen, in which the prosecution's evidence was not overwhelming and the complainant's credibility the key issue, a substantial risk of a miscarriage of justice was created by the prosecutor's improper eliciting of testimony from four fresh complaint witnesses, two of whom had an extensive background investigating sex abuse cases, that they believed the complainant was telling the truth at the time she made her disclosures to them. [69-72]


INDICTMENTS found and returned in the Superior Court Department on March 15, 1991.

The cases were tried before *Robert Malcolm Graham*, J.

*M. Page Kelley*, Committee for Public Counsel Services, for the defendant.

*Vincent R. McDonough*, Assistant District Attorney, for the Commonwealth.

GILLERMAN, J. The defendant appeals from his convictions of indecent assault and battery upon a child under age fourteen, G. L. c. 265, § 13B, returned by a jury after a four-day trial.[1] He contends that it was prejudicial error for the

---

[1]The defendant was indicted on six counts of rape of a child by force, G. L. c. 265, § 22A, assault with intent to rape, G. L. c. 265, § 24B, and seven counts of indecent assault and battery upon a child under fourteen, G. L. c. 265, § 13B. At the close of the defendant's case, the judge entered a required finding of not guilty on the indictment charging assault with intent to rape. The jury acquitted him on all counts of the charge of rape of a child, and found him guilty on four of the seven counts of indecent assault and battery.

prosecutor to elicit from the four fresh complaint witnesses testimony that they believed the complainant was telling the truth at the time of her disclosures. The defendant objected to the questioning of only one of these witnesses. Nonetheless, we set aside the verdicts and reverse the convictions.

*The evidence and the proceeding below.* The complainant, eight years old at the time of trial, testified that the defendant, her former stepfather, had sexually abused her on three occasions in the spring of 1989 when she was six years old, after his separation from her mother. In the summer of 1989, the complainant first spoke of the sexual abuse to both her mother, Marie Lynch, and her mother's sister, Diane Guarente. In July of 1990, she disclosed the alleged abuse to Katherine O'Neill, a social worker with the Department of Social Services. After speaking with O'Neill, the complainant spoke with Guarente again, supplying more details about the abuse than before. In February of 1991, the complainant told Detective Martin Nee of the sexual assault unit of the Boston police department about the alleged assault.

The allegations were denied. The defendant offered evidence to prove that the complainant may have contrived the allegations against him because she was jealous of the time he spent with her younger half sister Carol[2]; and he offered evidence that the complainant's mother was vengeful because of her involvement with the defendant in a custody dispute over Carol. He accounted for the complainant's knowledge of sexual matters with evidence that she had heard her mother discuss explicit sexual matters with different friends on many occasions.

In addition to the complainant's testimony with regard to the defendant's alleged abuse of her, the prosecution called the four fresh complaint witnesses to corroborate the complainant's testimony. The prosecutor also asked each of the four witnesses whether he or she believed that the complainant was telling the truth. A portion of Marie Lynch's testimony went as follows:

---

[2]This sister, to whom we refer by a fictitious name, was the biological daughter of the defendant and the complainant's mother.

Q: "Is there any doubt in your mind that [the complainant is] telling you the truth about what the defendant did to her?"

A: "There's no doubt in my mind."

Q: "Did you believe your daughter in June of 1989, when she told you what he did to her?"

A: "No; I didn't."

Q: "Was there a reason you didn't?"

A: "I couldn't believe that he would do something like that."[3]

Q: "What is it now that makes you believe that he could?"

A: "When she went into detail and she told me so many things that would be so unknown to her, . . . can't see how she can be lying."

Q: "Is there anything else about her behavior that makes you feel that what she's telling you is the truth?"

A: "She seems like she has a lot off her mind, and she's doing a lot better."

Q: "Is her twenty-four hour day like any other child's pretty much at this point?"

A: "Yes it is."

Q: "Have you had any discussions with [the complainant] about not believing her in June of 1989?"

A: "Yes; I did."

Q: "When?"

A: "After she told the social worker and she went into detail with me, I told her I was sorry that I didn't believe her, and I felt a lot of guilt that I made her carry that all by herself for so long."

Q: "And do you feel guilty at this point?"

A: "Yes; I do."

Q: "And there is no doubt in your mind at this time?"

A: "No doubt."

---

[3]The defendant concedes that Lynch might have been given some latitude in her testimony to explain why she did not notify the authorities after her daughter first complained, but argues that the questioning exceeded any permissible bounds.

The prosecutor also asked Guarente whether there was "any doubt in [her] mind that [the complainant] is telling the truth?" to which she responded, "She's telling the truth." From O'Neill, the social worker, the prosecutor elicited testimony that she had told Lynch she was convinced that the defendant had touched the complainant sexually because she "did not believe in [her] experience that a child would make a spontaneous disclosure that was that clear, in that way." The prosecutor summed up her direct questioning of O'Neill by asking, "Is there any question in your mind that [the complainant] was being truthful with you when she told you that the defendant touched her in a place where he shouldn't?" O'Neill replied, "I was absolutely convinced at that time."

Finally, the prosecutor asked Detective Nee his opinion as to the complainant's credibility:

Q: "Based on your experience, detective, in interviewing children who have been the subject of sexual abuse, was there anything in this child's demeanor that may have suggested to you that she was lying to you?"
A: "No, nothing."

*Discussion.* The testimony of the four fresh complaint witnesses with regard to the credibility of the complainant was not admissible. "Evaluations of credibility are, of course, within the exclusive province of the trier of fact." *Commonwealth v. Ianello*, 401 Mass. 197, 202 (1987), quoting from *Commonwealth v. Bohannon*, 376 Mass. 90, 94 (1978). Further, "[t]he courts guard against encroachments on the province of the jury." 401 Mass. at 203. Compare *Commonwealth v. Montanino*, 409 Mass. 500, 502-505 (1991) (testimony designed to present to the jury the witnesses' opinion that the complainant was credible because irregularities in his earlier statements were consistent with the conduct of truthful victims of sexual abuse was held to be error requiring reversal).[4]

---

[4]Compare *Commonwealth v. Dockham*, 405 Mass. 618, 628-630 (1989) (expert testimony on general behavioral characteristics of sexually abused

"The opinion testimony . . . violated the long-standing rule that witnesses may not offer their opinions regarding the credibility of another witness." *Id.* at 504.

The Commonwealth mistakenly relies on *Commonwealth v. Grenier*, 415 Mass. 680, 689-690 (1993), where the facts are quite different. There the court held it was not error to admit a police inspector's accusation that he did not believe the defendant, made during the course of a police interrogation of the defendant, and that the defendant then became "noticeably nervous." "[The police officer's] statement [to the defendant], in the course of a police interview, that he did not believe the defendant is *not* the same as the testimony of a witness at trial who impermissibly expresses an opinion about the credibility of another witness" (emphasis added). *Id.* at 690. Here, plainly, we have an impermissible opinion, not an accusation made during an interrogation.

The Commonwealth argues that the witnesses were not commenting upon the complainant's trial testimony, but rather about her demeanor at the time she complained to them. The Commonwealth's characterization of the testimony in question as demeanor evidence is simply disingenuous. We recognize that demeanor evidence may be admissible as a "summary description of . . . [another's] emotional, mental or physical condition." *Commonwealth* v. *Shine*, 398 Mass. 641, 656 (1986). See Liacos, Massachusetts Evidence § 7.5, at 370 (6th ed. 1994). However, the challenged testimony — that the witnesses believed the complainant's allegations when made — bears no relation to her appearance or emotional state.

In sum, the testimony of the fresh complaint witnesses with regard to the credibility of the child should not have been in evidence; but because the defendant failed to object to all but Detective Nee's testimony regarding the complainant's credibility,[5] we must determine whether the admission

---

children, if offered without "reference or comparison to the child witness," admissible).

[5]The judge overruled counsel's objection, noting that "it's for you the jury to decide the ultimate issue of who is telling us the truth. . . ."

of the evidence created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). See generally *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986), discussing standards for application of the *Freeman* exception. We conclude that the defendant was subjected to such a risk.

Preliminarily, we note that the opinion testimony of fresh complaint witnesses, favorable as to the credibility of the complainant, is especially pernicious here for the additional reason that the opinions admitted in evidence enhanced the likelihood that the jury would accept such testimony for the truth of the complainant's fresh complaint statements, and not merely the fact of the complaint; however, fresh complaint statements are *not* admissible for the truth of what was said by the complainant. *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992). The error in admitting the testimony was doubly wrong, and adds to the prejudice to the defendant.

The prejudice to the defendant was further compounded by the testimony of two of the four fresh complaint witnesses. The jury likely perceived Katherine O'Neill and Detective Nee, because of their extensive background in sex abuse cases,[6] as especially qualified to judge the credibility of children. However, in this Commonwealth, an expert may not offer an opinion on a witness's credibility, even that of a child who alleges sexual abuse. *Commonwealth* v. *Ianello*, 401 Mass. 197, 202 (1987).

Further, the prosecution's evidence was not overwhelming. Inevitably, as in most such cases, the complainant was the key prosecution witness, and her credibility was the crucial issue. In these circumstances, the improper use of fresh com-

---

[6]O'Neill testified that she had worked for the Department of Social Services for approximately eight years and that she had investigated at least 125 allegations of sexual abuse; in addition, she stated that on more than one occasion she had not supported an allegation of abuse. Detective Nee testified that he had investigated "upwards of 800, 1,000, maybe" cases of sexual assault in his seven years in the sexual assault unit.

plaint testimony of no fewer than four witnesses[7] so unfairly bolstered the complainant's testimony that the defendant was deprived of a fair trial. Thus, it is impossible to conclude that the challenged testimony was without prejudicial and consequential effect on the jury. See *Commonwealth* v. *Long*, 17 Mass. App. Ct. 707, 710 (1984).

We conclude that the error is "sufficiently significant in the context of the trial to make plausible an inference that the result might have been otherwise but for the error." *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. at 21. The Commonwealth's questions did not go to minor inconsistencies in testimony that had no bearing on the central issue. Compare *Commonwealth* v. *Krepon*, 32 Mass. App. Ct. 945, 948 (1992). Here, the four witnesses were polled on the very question the jury was asked to decide — whether the alleged abuse had really occurred.[8]

---

[7]We emphasize, as did the court in *Commonwealth* v. *Lavalley*, 410 Mass. 641, 646 (1991), that the "piling on" of testimony of fresh complaint witnesses creates the risk that the jury will take the testimony as substantive evidence.

[8]The Commonwealth contends that because the challenged evidence "[a]t most . . . amounted to four improper questions," we should label it harmless error. Compare *Commonwealth* v. *Long*, 17 Mass. App. Ct. 707, 708-710 (1984) (reversible error found where improper line of questioning consisted of more than one hundred improper questions) with *Commonwealth* v. *Flanagan*, 20 Mass. App. Ct. 472, 477-478 (1985) (finding harmless error in situation where four improper questions were asked).

This argument fails to recognize that what is of consequence is not the number of errors made, but rather the quantum of their prejudicial force on the jury. In a case such as this, where the prosecutor elicited improper testimony from each and every one of the four fresh complaint witnesses about the central issue of the case — whether the complainant was or was not truthful, i.e., whether the alleged crimes were committed — we have no doubt that reversible error occurred. See *Commonwealth* v. *Long*, 17 Mass. App. Ct. at 710 (improper questioning, in light of the Commonwealth's failure to provide overwhelming evidence of the defendant's guilt, requires new trial). Compare the following cases where harmless error was found: *Commonwealth* v. *Ward*, 15 Mass. App. Ct. 400, 401 (1983) (improper question put to defendant that asked him to explain inconsistency between his own testimony and that of Commonwealth's witness elicited a response that did not characterize the witness's testimony as true or false); *Commonwealth* v. *Collett*, 17 Mass. App. Ct. 913, 914 (1983) (explanation of conflict in testimony characterized by defendant as misunderstand-

Finally, there appears to have been no strategic reason for not objecting to the challenged evidence. Cf. *Commonwealth v. Sugrue*, 34 Mass. App. Ct. 172, 174 (1993) (holding ineffective assistance of counsel). Nothing in the judge's instructions to the jury mitigated the prejudice.

We add only that on retrial of this case, the Commonwealth should avoid urging the jury in its closing argument that, by finding the defendant guilty, they will support the complainant, whom "no one [had] wanted to believe. . . ." See *Commonwealth v. Sanchez*, 405 Mass. 369, 375 (1989) (prosecutor's statement to jury that they should convict defendant to end victims' nightmares was an improper "exhortation that the jury had a duty to the victims to render verdicts of guilty"); *Commonwealth v. McLeod*, 30 Mass. App. Ct. 536 (1991).

*Judgments reversed.*
*Verdicts set aside.*

---

ing); *Commonwealth v. Flanagan*, 20 Mass. App. Ct. 472, 477-478 (1985) (conflict characterized as mistake).