COMMONWEALTH *vs.* SHANNON RICHARDSON.

No. 94-P-334.

Suffolk. January 4, 1995. - April 7, 1995.

Present: DREBEN, GILLERMAN, & LAURENCE, JJ.

Further appellate review granted, 420 Mass. 1105 (1995).

*Evidence,* Expert opinion, Credibility of witness, Prior misconduct. *Witness,* Expert. *Child Abuse. Rape. Practice, Criminal,* Argument by prosecutor.

At the trial of an indictment for rape of a child under sixteen years of age with force in which credibility was a crucial issue, the judge erred in allowing in evidence opinion testimony of a police officer regarding the testimony of the alleged victim, and a new trial was required where the jury's verdict may have been substantially swayed by the error. [389-391] DREBEN, J., dissenting.

At a criminal trial, the judge properly admitted, with limiting instructions, certain testimony of a witness that related prior bad acts of the defendant, which was admissible for the purpose of rehabilitating the witness. [391-392]

No issue of alleged impropriety in the prosecutor's closing argument at a criminal trial was properly preserved for appellate review. [392]

At the retrial of a rape indictment any expert witness should not be permitted to opine as to whether the complainant's conduct was consistent with the general characteristics of a sexually abused child. [392-393]

INDICTMENT found and returned in the Superior Court Department on April 5, 1991.

The case was tried before *Thomas E. Connolly,* J.

*Paul J. Machado* for the defendant.

*Linda M. Poulos,* Assistant District Attorney, for the Commonwealth.

GILLERMAN, J. According to the testimony of the thirteen year old complainant (whom we shall call Mary), the defendant, two years earlier, had raped her on three separate occasions. A Suffolk County jury found the defendant guilty

on the first of three indictments,[1] each charging the defend-
ant with rape of a child under sixteen years of age with force
(G. L. c. 265, § 22A). The defendant appeals, claiming,
among other things, reversible error in the admission of cer-
tain expert testimony of a police officer, Sergeant Marie
Donahue.

From the evidence admitted at the trial, the jury could
have found the following facts. The three separate acts of
rape by the defendant occurred in the home of Mary's Aunt
Marilyn during August (twice) and September (once), 1990,
when Mary was eleven years old. Mary was staying with her
aunt while her mother was in the hospital and, afterwards
while her mother was recuperating at home. In each in-
stance, Mary was awakened by the defendant, who was on
top of her; her pants were pulled down to her ankles, and the
defendant was penetrating her. Mary's younger brother wit-
nessed one of the incidents, but he was unable to identify the
date of the incident. There were no witnesses to the other
two events.

Mary did not tell anyone about the incidents until Janu-
ary, 1991. Her disclosure was precipitated by a friend's unso-
licited statement that she had been raped by the defendant.
Mary then told her mother that she had been raped by the
defendant, but she did not provide any details.

On cross-examination Mary admitted that each time she
was raped, she told the defendant to stop, and cried; yet her
cousin, who was her close friend and who was asleep a few
feet away, never woke up. Nor did Mary wake her cousin up
after the event to tell her what had happened. Mary also ac-
knowledged that each time she awoke from sleep only when
the defendant was raping her, and not when the defendant
was pulling down bottom clothes. The defendant also brought
out minor inconsistencies between the events she described at

---

[1] The third indictment charged two counts of rape, the first by natural
sexual intercourse, and the second by unnatural sexual intercourse.

the first trial of this case[2] and her description of events at the trial of this case. Further, after the first incident, Mary continued to return to her aunt's house, even though she knew the defendant would be there, and even though she could have stayed with other relatives who lived close by.

The defendant called Sergeant Marie Donahue of the Boston police department, sexual assault unit, to whom Mary had spoken in March, 1991. Donahue testified that Mary had identified each of the three rooms in her aunt's house where she was raped in August and September. Donahue's description of what Mary had told her differed from what Mary had testified to on direct examination. Mary told Donahue that the place of the first rape was her cousin's bedroom on the third floor, that the second rape occurred on the sofa in the living room on the ground floor, and that the third rape occurred in her aunt's bedroom on the second floor. On direct examination, however, Mary had testified that the first rape occurred on the couch in the downstairs living room; the second rape occurred on the floor in the hallway outside of her aunt's second-floor bedroom, and the third rape occurred in her cousin's third-floor room. Thus, Mary had told Donahue one sequence of places where the rapes had occurred, while on direct examination Mary testified to a different sequence.

It was in this context that the prosecutor began his cross-examination of Donahue. He started with two questions about the sergeant's "training as a sexual assault officer" and then asked whether she had investigated other allegations of sexual abuse. The defendant objected because "[t]his is not relevant to anything." At sidebar, the prosecutor explained that he wished to elicit testimony that "it's not unusual for children not to be consistent in terms of times, places." The defendant objected that the sergeant was not an expert, to which the judge responded, "If you want counsel to develop her experience in dealing with sexual abuse, I bet you he'll

---

[2]The defendant was first tried from April 30, 1992, to May 6, 1992. A mistrial was declared because the jurors were unable to reach a verdict. This case was a retrial.

be able to do it, because I heard it in the last case she testified in here before. This woman is unbelievably experienced in this area, unbelievably." The colloquy at sidebar then continued as set forth in the margin.[3] The thrust of the defend-

---

[3]DEFENSE COUNSEL: "I am certainly objecting to it if it is to come in —"

THE COURT: "Is it that [the prosecutor] hasn't laid enough of a foundation for her expertise?"

DEFENSE COUNSEL: "Well, it's that [the prosecutor] hasn't laid enough of a foundation with her expertise and also that her expertise, even if it's established, does not necessarily relate to this case at all or to this particular victim."

THE COURT: "Overruled."

DEFENSE COUNSEL: "These people [the jury] are here to determine whether she's telling the truth."

THE COURT: "No, no. That's not what he's asking her. It's concerning the investigation of these kinds of — and she did investigate it, *but she's going to be applying her expertise to that. I'm going to allow the inquiry.*" (Emphasis supplied.)

DEFENSE COUNSEL: "Your honor, if I may just for the record —"

THE COURT: "Of course you can."

DEFENSE COUNSEL: " — *I think the thrust of this is that this witness is going to be commenting on the credibility of the victim by saying, oh, that's not unusual for kids to say different things or* [sic] *different times.* What she's in essence saying is I support this girl's testimony. This isn't unusual. Of course kids do that all the time. I've seen it in many, many cases, all cases in which people have gone to jail, theoretically." (Emphasis supplied.)

THE COURT: "Every school teacher has seen this. What are you talking about? Forget police officers."

DEFENSE COUNSEL: "The fact that a school teacher could come in here, I submit, and say or imply that [the complainant] is telling the truth —"

THE COURT: "What do you have to say about that, [prosecutor]?"

PROSECUTOR: "I'm not asking her to comment on the credibility. I'm asking her to comment on — obviously, one of the instructions that this court is going to give —"

THE COURT: "Exactly correct. It's almost right on point, fear, embarrassment, shame, et cetera."

PROSECUTOR: "Exactly."

THE COURT: "I'm going to allow the inquiry. Your objection is noted."

ant's objection was that Donahue would be commenting on the credibility of Mary.

Over the defendant's objection, the Commonwealth proceeded to establish that the sergeant supervised six detectives who investigate sexual assault, that she had conducted "hundreds" of investigations herself, and that she always spoke with the child complainants. The Commonwealth's cross-examination then proceeded as follows:

> Q. "And, when you speak with children, is it unusual for them to remember the exact date when an incident takes place that they're referring to?"
>
> DEFENSE COUNSEL: "Objection."
>
> THE COURT: "Overruled. You may have it."
>
> A. "Based on my experience, unless the incident happened that particular day that they are telling me, *it's highly unusual that they remember dates and times and sequences*" (emphasis supplied).
>
> Q. "Why is that?"
>
> A. "Based on their tender years, the trauma that they've gone through, the emotional state that they're in, and based on their tender years, it's very unusual that a child would remember dates and times."
>
> Q. "As well as sequences, you've testified."
>
> A. "Sequence. Yes, sir."
>
> Q. "When you say 'sequence,' could you describe what you mean by it?"
>
> A. "When an incident took place. For example, if incidents took place over a number of time[s], which time would be the first, sequence meaning which would take place in a specific pattern. *It would be difficult for a child to remember the specific incidents and the specific times, specific places where it happened and things like that.*" (Emphasis supplied.)

Although the judge ruled (based on his experience in another case involving the testimony of Donahue) that Donahue's proffered testimony regarding sex abuse victims was admissible because Donahue was an expert in such matters, Donahue "was not presented to the jury as an expert, and the judge's instructions to the jury were barren of any reference to experts or expert testimony . . . ." *Commonwealth* v. *Wolcott*, 28 Mass. App. Ct. 200, 207 (1990).[4] Donahue appeared to the jury as a lay witness, and, as in *Wolcott* at 207, we must assess her testimony against "the basic requirement that lay witnesses confine their testimony to what they have themselves gleaned by the use of their senses . . . ."[5]

Putting to one side the difficulty that the judge's ruling placed an assessment of Donahue's qualifications beyond the reach of the jury and of an appellate court, see *id.*, there is the fundamental difficulty that the purpose and thrust of Donahue's testimony — like the testimony of the investigating sergeant in *Commonwealth* v. *Montanino*, 409 Mass. 500, 502-504 (1991) — was to make Mary's testimony "credible on the theory that the irregularities in [Mary's] statements were consistent with the manner in which truthful victims of sexual assault relate their experiences." *Id.* at 504.

We recognize that often "the line between proper testimony as to patterns of disclosure of child sexual abuse victims and improper testimony constituting endorsement of the credibility of a victim-witness," *Commonwealth* v. *Rather*, 37 Mass. App. Ct. 140, 148 (1994), presents a close ques-

---

[4]Contrast the judge's detailed description to the jury of the function of expert testimony appearing in *Commonwealth* v. *Dockham*, 405 Mass. 618, 629 (1989).

[5]Donahue's testimony would not qualify as a "shorthand expression[ ] of facts." See *Commonwealth* v. *Smith*, 17 Mass. App. Ct. 918, 920-921 (1983) (describing the three-pronged test for the availability of this exception to the rule precluding opinion testimony by lay witnesses); Liacos, Massachusetts Evidence §§ 7.4 & 7.5 (6th ed. 1994 & Supp. 1995). Contrast *Commonwealth* v. *Lopes*, 34 Mass. App. Ct. 179, 186 (1993). Contrast also *Commonwealth* v. *Gamache*, 35 Mass. App. Ct. 805, 808-809 (1994), cited by the dissent, where the court's comments are to be read in the context of the defendant's challenge to the testimonial competency of the child complainant.

tion. But the facts in this case bear a remarkable resemblance to the facts in *Montanino,* where the verdict was set aside. In *Montanino,* the investigating sergeant's testimony described the behavior of "most" sexual assault victims. Here, the testimony of the investigating sergeant described the behavior of sexual assault victims in terms of whether the behavior under discussion would be "highly unusual." Indeed, Donahue testified that for a child to remember the "specific places where [the specific incidents] happened" — the precise point of vulnerability of Mary's testimony — would be "difficult." As in *Montanino, supra* at 504, "the impact on the jury of [Donahue's] observations regarding sexual assault victims had the same effect as if [Donahue] had directed [her] comments specifically to [Mary's] credibility." Whether Donahue is considered a lay witness or an expert witness, her testimony violated the rule that witnesses may not offer their opinions regarding the credibility of another witness. Since Mary was the key prosecution witness, her credibility was a crucial issue. "The improper use of Sgt. [Donahue's] opinion testimony to bolster [Mary's] testimony was error requiring reversal." *Id.* at 504-505. See also *Commonwealth* v. *Colin C.,* 419 Mass. 54, 61 (1994) (reversible error to allow psychiatrist's opinion that the complainant was sexually abused; the testimony was essentially a statement vouching for the credibility of the complainant); *Commonwealth* v. *Trowbridge,* 419 Mass. 750, 759-760 (1995) (physician's testimony that symptoms and physical condition of child were consistent with type of sexual abuse child alleged held erroneously admitted); *Commonwealth* v. *Lorette,* 37 Mass. App. Ct. 736, 738-740 (1994) (reversible error to allow mother's testimony that her child's statements made "everything just fit"). Contrast *Commonwealth* v. *Hudson,* 417 Mass. 536, 539, 543 (1994).

The Commonwealth argues that if there was error it was harmless because the jury returned a verdict on the "only charge" corroborated by the evidence (the complainant's brother testified that on one occasion he saw the defendant on top of his sister "humping" her, and he heard her say

"stop"). As we said at the outset, there were two identically worded indictments charging a rape in August, 1990; the third indictment charged a rape in September, 1990. The jury found the defendant guilty of the first of the two indictments charging an August rape. The complainant's brother was unable to identify the day or month of the event he allegedly witnessed. As we noted earlier, Mary told Donahue that the rape in the living room was the *second* offense, while she testified on direct examination that the rape in the living room was the *first* offense. The same difficulty adheres to the mother's fresh complaint testimony; Mary told her mother that she had been raped by the defendant but no more. The result is that the brother enhanced Mary's credibility only with regard to one unidentified episode. The jury's verdict remains inscrutable. See also *Commonwealth* v. *Powers*, 36 Mass. App. Ct. 65, 70 (1994) (police officers with extensive experience in sex abuse cases likely to be viewed by jury as especially qualified to judge the credibility of children). We conclude that the judgment may have been "substantially swayed by the error." *Commonwealth* v. *Rather*, 37 Mass. App. Ct. at 149, quoting from *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983). See also *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).

In the event this case is retried,[6] we comment briefly on an issue likely to arise. As we noted earlier, Mary's first disclosure of the alleged abuse was prompted by the unsolicited statement of a friend that she had been raped by the defendant. After Mary's credibility had been challenged by cross-examination pointing out certain inconsistencies in her testimony and her failure to disclose the alleged abuse for approximately six months, the Commonwealth was entitled to have Mary explain "why, after a long period of silence, she complained of the defendant's conduct to her mother." *Commonwealth* v. *Errington*, 390 Mass. 875, 881 (1984). The statement of "prior bad acts" was admissible for that limited

---

[6]In connection with the possible retrial, it is not necessary for us to consider at this time *Commonwealth* v. *Hrycenko*, 417 Mass. 309, 315-317 (1994).

purpose, and the judge immediately gave limiting instructions.[7] There was no error.

The defendant also claims error in the prosecutor's summation. We have reviewed the prosecutor's closing argument. We do not agree that it appealed excessively to the sympathy of the jury. In any event the point does not warrant extended discussion. At the conclusion of the prosecutor's summation, the defendant objected on the ground that the prosecutor's comments excessively appealed to the sympathy of the jury. The judge suggested that the defendant wait until the conclusion of his charge to the jury, and "[i]f you have a problem that I didn't cover one of these issues, because my charge is given slow and accurate to this jury, why don't we just chat about it and I'll entertain whatever suggestions you wish to amend. Is that satisfactory?" The defendant responded, "That's fine." At the end of the judge's instructions, the defendant did not make any objections or recommendations for a further charge on that point. The objection was not preserved. See *Commonwealth* v. *Toro*, 395 Mass. 354, 359-360 (1985).

Upon retrial, any expert witnesses "should not be permitted to opine as to whether [the complainant's] behavior or condition in any way conformed to or was consistent with the general characteristics of a sexually abused child." *Commonwealth* v. *Swain*, 36 Mass. App. Ct. 433, 445 (1994).

---

[7]Specifically, the judge said:

"You've heard conversations here, this lady relating conversations with this other lady Michelle and the only reason these conversations are being admitted, they're not being admitted for the truth of what anybody did, it's only, the Commonwealth is entitled to place any kind of — in the context by introducing evidence of what prompted certain statements and prompted certain actions on behalf of the defendant.

"So, it's not being admitted for the truth of what was done but only for the fact that that's what was said in terms of completeness so you'll understand the context in which this discussion came up.

"Is there anything further the defendant would like me to instruct the jury on?"

DEFENSE COUNSEL: "No."

The judgment is reversed and the verdict is set aside.

*So ordered.*

DREBEN, J. (dissenting). While I agree that Sergeant Donahue's testimony should have been excluded, see *Commonwealth* v. *Montanino*, 409 Mass. 500, 502-504 (1991), in my view the improper admission did not constitute prejudicial error. See *Commonwealth* v. *Daggett*, 416 Mass. 347, 352 n.5 (1993).

The victim's testimony and her account as related to Sergeant Donahue did not vary as to the number of rapes or in which rooms they had taken place — the living room (first floor), the hall near the aunt's bedroom (second floor) and the cousin's room (third floor). Although the inconsistency relied on by the defendant was the order or sequence in which the rapes occurred, what Sergeant Donahue told the jury was not, in my view, very significant. That children have difficulty with the concept of time is recognized by appellate courts, see *Commonwealth* v. *Gamache*, 35 Mass. App. Ct. 805, 808-809 (1994), and is, I believe, undoubtedly within the ken of most jurors. This cannot be as readily said of the testimony in *Montanino*, where the police officer testified "that over the course of his interviews with sexual assault victims, 'most' victims eventually provided more details regarding the assault than they initially revealed." *Id.* at 502-503.

More important than the difference between the testimony of the police officer in *Montanino* and the police officer's testimony in this case is the strong corroboration here of the victim's testimony as to the rape in the living room. That incident was corroborated by the victim's brother, who at the time of the event was eight years old. He testified that, one night when he was in the kitchen, he saw the defendant "humping" his sister. The only incident he could have seen from the kitchen was the one on the first floor, the one identified by the victim as the first to occur. His testimony that he was sad and went home late that night after being hit by the

defendant was corroborated by his mother, who testified that during the period she was in bed after her hospitalization, her son, who had been staying with her sister, came home one night at one in the morning, the only time he had ever come home so late.

In light of this strong supporting testimony, which to me explains the jury's finding the defendant guilty on the first of the three indictments, I cannot agree with the majority's holding that Donahue's testimony to the effect that children have difficulty in remembering dates and times and sequences could have influenced the jury's verdict. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994); *Commonwealth* v. *Rather*, 37 Mass. App. Ct. 140, 149 (1994).

I would affirm the conviction.