Commonwealth v. Richardson.

COMMONWEALTH vs. SHANNON RICHARDSON.

Suffolk. March 7, 1996. - July 15, 1996.

Present: Liacos, C.J., Wilkins, Abrams, Lynch, & Greaney, JJ.

*Evidence,* Expert opinion, Credibility of witness, Opinion, Fresh complaint, Prior misconduct. *Witness,* Expert, Credibility. *Child Abuse. Practice, Criminal,* Argument by prosecutor.

At the trial of an indictment for rape of a child under the age of sixteen with force, the judge did not abuse his discretion in determining that a certain matter was properly the subject of expert testimony and in qualifying a police officer as an expert witness based on her extensive training, education and experience in investigating allegations of sexual assault on children and, in particular, in interviewing children who may have been victims of such assault. [182-183]

At a criminal trial, there was no error in the judge's qualification of an expert witness outside of the presence of the jury. [184]

At a criminal trial, there was no substantial risk of a miscarriage of justice in the judge's failure to give an instruction to the jury with respect to the testimony of an expert witness who had not been identified as such to the jury, where the judge adequately instructed the jury with respect to their role in determining the credibility of the witnesses. [184-185]

Even if, at the trial of three indictments for forcible rape of a child under the age of sixteen, certain testimony of an expert witness should not have been admitted as an impermissible vouching for the credibility of the victim, the error was not prejudicial in circumstances in which the jury reached a verdict of guilty on the only indictment that was corroborated by an eyewitness to the event. [185-187]

At a rape trial, hearsay evidence of the defendant's alleged sexual assault of a person other than the victim, was properly admitted to show why the victim, when she heard that accusation, then complained of the defendant's assault on her; moreover, where the Commonwealth needed to rehabilitate the victim on redirect examination, the probative value of that evidence outweighed its prejudicial effect. [187-188]

Nothing in the prosecutor's closing argument at a rape trial created a substantial risk of a miscarriage of justice. [188-189]

INDICTMENT found and returned in the Superior Court Department on April 5, 1991.

The case was tried before *Thomas E. Connolly,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Linda Marie Poulos,* Assistant District Attorney, for the Commonwealth.

*Paul J. Machado* for the defendant.

LYNCH, J. A Suffolk County grand jury returned three indictments charging the defendant with rape of a child under the age of sixteen years with force. After a second trial,[1] the jury convicted the defendant of the offense alleged in the first indictment and acquitted him on the two remaining indictments. The Appeals Court reversed, *Commonwealth* v. *Richardson,* 38 Mass. App. Ct. 384 (1995),[2] concluding that the admission of certain expert testimony was prejudicial error. We granted the Commonwealth's application for further appellate review and now affirm the judgment of the Superior Court.

1. *Facts.* The jury could have found the following facts. When the victim was about eleven years old, she was raped by the defendant in August and September, 1990. The rapes occurred at the victim's aunt's house, where she was staying while her mother was in the hospital and, later, while her mother was recuperating at home. The first rape occurred on the first floor on the living room sofa; the second occurred in the aunt's bedroom; and the third occurred in her cousin's bedroom. The victim's younger brother testified that, when he came down to the kitchen for a drink of water late one night, he saw the defendant "humping" his sister and heard her saying, "Stop." The defendant then got up and hit him, and the victim's brother ran to his mother's house. The victim's mother confirmed that, during the summer of 1990, her son had come into the house very late one night, which was out of the ordinary.

The defendant called Sgt. Marie Donahue of the Boston police department's sexual assault unit, who testified on direct examination that the victim had told her of the three incidents in a different sequence.

On cross-examination, the Commonwealth sought to elicit testimony from Sgt. Donahue that "it's not unusual for children to not be consistent in terms of times, places." Over the

---

[1]The first trial was declared a mistrial after the jury were unable to reach a verdict.

[2]One member of the panel dissented on the ground that any error was not prejudicial. *Commonwealth* v. *Richardson,* 38 Mass. App. Ct. 384, 393 (1995) (Dreben, J., dissenting).

defendant's objection, the judge allowed the witness to testify that "it's highly unusual that [child victims] remember dates and times and sequences." The objected-to testimony is set out in the margin.[3]

2. *Expert testimony.* The defendant raises several issues regarding the admission of the testimony of Sgt. Donahue. First, he argues that her opinion testimony on cross-examination was inadmissible because she was not properly qualified as an expert. Second, he argues that her opinions, even if admissible as expert testimony, impermissibly vouched for the credibility of the victim witness.

"The admission of expert testimony lies 'largely in the discretion of the trial judge.' " *Commonwealth* v. *Hudson,* 417 Mass. 536, 540 (1994), quoting *Commonwealth* v. *Maltais,* 387 Mass. 79, 93 (1982). "The judge's 'ruling will be reversed on appeal only if it constituted an abuse of discretion or was otherwise tainted with error of law.' " *McLaughlin* v. *Selectmen of Amherst,* 422 Mass. 359, 362 (1996), quoting *Commonwealth* v. *Devlin,* 365 Mass. 149, 152 (1974). As a preliminary matter, the judge did not abuse his discretion in determining that the subject matter was appropriate for expert testimony. "[C]ourts have uniformly allowed expert testimony

---

[3]THE PROSECUTOR: "And, when you speak with children, is it unusual for them to remember the exact date when an incident takes place that they're referring to?"

DEFENSE COUNSEL: "Objection."

THE JUDGE: "Overruled. You may have it."

THE WITNESS: "Based on my experience, unless the incident happened that particular day that they are telling me, it's highly unusual that they remember dates and times and sequences."

THE PROSECUTOR: "Why is that?"

THE WITNESS: "Based on their tender years, the trauma that they've gone through, the emotional state that they're in and based on their tender years, it's very unusual that a child would remember dates and times."

THE PROSECUTOR: "As well as sequence, you've testified."

THE WITNESS: "Sequence. Yes, sir."

THE PROSECUTOR: "When you say, 'sequence,' could you describe what you mean by it?"

THE WITNESS: "When an incident took place. For example, if incidents took place over a number of time[s], which time would be the first, sequence meaning which would take place in a specific pattern. It would be difficult for a child to remember the specific incidents and the specific times, specific places where it happened and things like that."

on the typical symptoms of sexually abused children because the information is beyond the common knowledge of jurors and of assistance in assessing a victim witness's testimony and credibility." *Commonwealth* v. *Hudson, supra.*

The judge also did not abuse his discretion in qualifying Sgt. Donahue as an expert. " 'The crucial issue,' in determining whether a witness is qualified to give an expert opinion, 'is whether the witness has sufficient "education, training, experience and familiarity" with the subject matter of the testimony.' " *McLaughlin* v. *Selectmen of Amherst, supra* at 361-362, quoting *Letch* v. *Daniels,* 401 Mass. 65, 68 (1987). See *Leibovich* v. *Antonellis,* 410 Mass. 568, 571-573 (1991). Here, Sgt. Donahue testified to her extensive training, education, and experience in investigating allegations of sexual assault on children, and, in particular, in interviewing children who may have been victims of such assault. The judge had an adequate basis which we set out in detail in the margin for qualifying Sgt. Donahue as an expert.[4]

---

[4]The defendant argues that the qualification of Sgt. Donahue as an expert was flawed because the judge referred to another proceeding in which the same witness had testified. Before qualifying the witness as an expert at sidebar, the judge commented: "If you want counsel to develop her experience in dealing with sexual abuse, I bet you he'll be able to do it, because I heard it in the last case she testified in here before. This woman is unbelievably experienced in this area, unbelievably." While the judge's reference to another proceeding in a separate case was unhelpful and could not properly form the basis for his preliminary finding, the record contains adequate testimony to support such a finding, as the excerpts below demonstrate:

THE PROSECUTOR: "Also with respect to your training, can you tell us something about your training as a sexual assault officer?"

THE WITNESS: "Yes, sir. In 1984, I began investigating sexual assaults until 1988, at which time I was promoted. Then I resumed sexual assault investigations in 1991."

THE PROSECUTOR: "Do you have any specialized training, or is it all on-the-job training?"

THE WITNESS: "I've taken numerous seminars and courses on sexual assault, child sexual assault, and my own experience."

THE PROSECUTOR: "As I understand it, you've taken courses specifically on child sexual assault?"

THE WITNESS: "Yes, sir."

THE PROSECUTOR: "Have you had an opportunity to investigate other allegations of child sexual assault?"

THE WITNESS: "Many."

"[Sidebar conference.]"

The defendant argues that the qualification of Sgt. Donahue was improper because it was done outside the hearing of the jury and because there was no instruction to the jury on how to evaluate expert testimony. We disagree. First, the judge need not qualify a witness as an expert before the jury. "Although it is for the court to determine whether a witness is qualified to testify as an expert, there is no requirement that the court specifically make that finding in open court upon proffer of the offering party. Such an offer and finding by the Court might influence the jury in its evaluation of the expert and the better procedure is to avoid an acknowledgement of the witnesses' expertise by the Court." *United States* v *Bartley*, 855 F.2d 547, 552 (8th Cir. 1988). See *Commonwealth* v. *Boyd*, 367 Mass. 169, 183 (1975) (judge need not make preliminary finding of expert's qualifications within hearing of jury).

The defendant did not request an instruction on expert testimony. Therefore, our review is confined to whether any error created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). The purpose of standard instructions on expert testimony is

THE PROSECUTOR: "Sergeant, how many years have you been with the Sexual Assault Unit?"

THE WITNESS: "Again, from 1984 to 1988 and then from '91 until the present."

THE PROSECUTOR: "When did you become a sergeant detective?"

THE WITNESS: "In '91."

THE PROSECUTOR: "Can you tell us, what are the functions and responsibilities of a sergeant detective?"

THE WITNESS: "My responsibilities are I am the night commander. I supervise the detectives who investigate sexual assaults."

THE PROSECUTOR: "And how many detectives do you supervise?"

THE WITNESS: "Six."

THE PROSECUTOR: "Do you also still conduct investigations, yourself?"

THE WITNESS: "Yes, I do."

THE PROSECUTOR: "How many investigations have you conducted of alleged sexual assaults on children?"

THE WITNESS: "Hundreds."

THE PROSECUTOR: "During conducting those investigations, have you had an opportunity to speak with the complainants, themselves?"

THE WITNESS: "Always."

primarily to remind the jury that they are the sole judges of credibility, and to counteract the possibility that designation of a witness as an expert might create the impression among the jury that they may not disbelieve the witness's testimony. See generally C.R. Richey, Proposals to Eliminate the Prejudicial Effect of the Use of the Word "Expert" under the Federal Rules of Evidence in Civil and Criminal Jury Trials, 154 F.R.D. 537 (1994).

Here, the witness testified on direct examination as a fresh complaint witness and an investigating police officer. Moreover, Sgt. Donahue, while a qualified expert for purposes of her testimony, did not belong to one of the professions easily identified by jurors as those from whom expert opinions are typically drawn. For those reasons, there was little danger that the jury would ascribe additional significance to her testimony in the absence of an official designation by the judge as an "expert witness." Cf. *Commonwealth* v. *Brouillard*, 40 Mass. App. Ct. 448, 453 (1996); *Commonwealth* v. *Powers*, 36 Mass. App. Ct. 65, 70 (1994). Finally, the judge adequately instructed the jury on their role as judges of the credibility of all witnesses, with a special reference to fresh complaint witnesses and the credibility of minor children. We conclude that the judge properly qualified the witness as an expert and did not create a substantial risk of a miscarriage of justice in failing to instruct the jury on their role in evaluating expert testimony. Cf. *Commonwealth* v. *Allen*, 40 Mass. App. Ct. 458, 468 (1996); *Commonwealth* v. *Wolcott*, 28 Mass. App. Ct. 200, 207-208 (1990). See generally P.J. Liacos, Massachusetts Evidence § 7.10.1, at 413 (6th ed. 1994).

3. *Vouching.* The defendant contends that, even if Sgt. Donahue was properly qualified as an expert witness, her testimony should not have been admitted because it impermissibly vouched for the victim's credibility. "Evaluations of credibility are, of course, within the exclusive province of the trier of fact." *Commonwealth* v. *Montanino*, 409 Mass. 500, 504 (1991), quoting *Commonwealth* v. *Ianello*, 401 Mass. 197, 202 (1987). "[W]itnesses may not offer their opinions regarding the credibility of another witness." *Commonwealth* v. *Montanino, supra.* "Although expert testimony on the general behavioral characteristics of sexually abused children is permissible, an expert may not refer or compare the child to those general characteristics." *Commonwealth* v. *Trowbridge,*

419 Mass. 750, 759 (1995). "Such testimony impermissibly intrudes on the jury's province to assess the credibility of the witness." *Id.*

The line between permissible and impermissible opinion testimony in child sexual abuse cases is not easily drawn. Where the witness explicitly links the opinion to the experience of the witness child, the opinion is clearly impermissible vouching. See *Commonwealth* v. *Trowbridge, supra*; *Commonwealth* v. *Colin C.*, 419 Mass. 54, 60 (1994); *Commonwealth* v. *Brouillard, supra*; *Commonwealth* v. *Powers, supra.* Where there is no link between the expert testimony and the victim, the opinion is usually allowed. See *Commonwealth* v. *Hudson, supra* at 541-543; *Commonwealth* v. *Mamay*, 407 Mass. 412, 421 (1990); *Commonwealth* v. *Dockham*, 405 Mass. 618, 629 (1989); *Commonwealth* v. *Allen, supra.* In some cases, however, opinion testimony that does not explicitly link the opinion to the child witness nevertheless constitutes impermissible vouching. See *Commonwealth* v. *Montanino, supra* at 504-505; *Commonwealth* v. *Ianello, supra* at 201-203; *Commonwealth* v. *Rather*, 37 Mass. App. Ct. 140, 148-149 (1994). The danger of such implicit vouching is greater where the witness is testifying as both a direct witness and an expert, particularly where the witness offers fresh complaint testimony. See *Commonwealth* v. *Rather, supra* at 148. See also *Commonwealth* v. *Lorette*, 37 Mass. App. Ct. 736, 741 (1994), *S.C.*, 422 Mass. 1014 (1996).

The testimony in this case comes close to the third category. Sgt. Donahue testified on direct examination as a fresh complaint witness for the defense. She said that she had interviewed the victim and had been told about the three incidents in a different sequence than that described by the victim in her own testimony. The expert testimony elicited on cross-examination regarding the capacity of child sexual abuse victims to determine the sequence of events thus implicitly related to the victim's credibility *as perceived by the expert witness herself.* While the testimony fell short of rendering an opinion on the credibility of the victim, it was very close to the line of admissibility. *Commonwealth* v. *Ianello, supra* at 201-203.

Even if this testimony should not have been admitted, we conclude that any error was not prejudicial, however, given the unique circumstances of the jury verdicts. It would not

appear that the vouching testimony had a prejudicial effect on the jury verdicts, where the jury refused to convict on two of the three indictments. The incidents alleged in the two indictments were supported only by the victim's testimony; the incident in one of the indictments was supported by the corroborating testimony of the victim's brother and to a lesser extent her mother. It is clear that the jury reached a guilty verdict on the only indictment which was corroborated by another eyewitness.[5] Accordingly, we conclude the error was harmless. See *Commonwealth* v. *Barbosa,* 421 Mass. 547, 555 (1995).

4. *Prior bad acts.* On cross-examination of the victim, the defendant brought out that she had had opportunities to report the rape but did not. In an attempt to rehabilitate the witness, the prosecutor, on redirect examination, asked questions regarding two incidents when the victim had told someone else about the rape. One of the incidents involved a group discussion with several friends, one of whom allegedly told the group that she had been raped by the defendant. This revelation led the victim to tell the group that the defendant had raped her.

The testimony regarding another rape was not admissible for its truth; it violated the hearsay rule and was not permitted for the purpose of showing the defendant's criminal disposition. See *Commonwealth* v. *Errington,* 390 Mass. 875, 881 (1984). The testimony was admissible, however, "because the fact that the statement was made, regardless of its truth or falsity, tended to rehabilitate the Commonwealth's witness by explaining why, after a long period of silence, she complained of the defendant's conduct." *Id.*

The defendant argues that the prejudicial effect of the testimony outweighs its probative value. We disagree. The Commonwealth had a serious need to rehabilitate its primary witness, a need which was created by the cross-examination. *Id.* In addition, there was a prompt jury instruction limiting

---

[5]We disagree with the Appeals Court that the contradictory testimony on the sequence of the rape incidents makes the jury verdict "inscrutable." *Commonwealth* v. *Richardson,* 38 Mass. App. Ct. 384, 391 (1995). The victim testified that the living room incident — the only incident which her brother could have witnessed — was the first of the three rapes. This testimony supports the jury's finding of guilty on the first of the three indictments. See *id.* at 394 (Dreben, J., dissenting).

the evidence to its proper use, which was then repeated at the end of all the evidence.[6] We conclude that the evidence was properly admitted. See *Commonwealth* v. *Errington, supra.* Cf. *Commonwealth* v. *Montanino, supra* at 505-507.

5. *Closing statement.* The defendant contends that certain comments by the prosecutor in the closing argument improperly appealed to the jury's sympathies.[7] The argument was not objected to at trial. A reading of the entire closing argument discloses nothing that creates a substantial risk of a miscarriage of justice, particularly in light of the judge's clear and comprehensive instructions and the evidence produced at trial. See *Commonwealth* v. *Anderson*, 411 Mass. 279, 285-

---

[6]The judge's instruction reads in pertinent part:

"You've heard conversations here, this lady relating conversations with this other lady . . . and the only reason these conversations are being admitted, they're not being admitted for the truth of what anybody did, it's only, the Commonwealth is entitled to place any kind of — in the context of introducing evidence of what prompted certain statements and prompted certain actions on behalf of the defendant.

"So it's not being admitted for the truth of what was done but only for the fact that that's what was said in terms of completeness so you'll understand the context in which this discussion came up."

[7]The prosecutor's closing statement included the following remarks:

"[T]he Commonwealth is not asking you to base your decision on emotion, not on emotion for the terrible and emotional trauma that [the victim] went through. . . .

"And I suggest here that when you look at the motivations, when you ask yourselves why in the world would [the victim] put herself through this humiliating, painful, emotional trial, why would she come up in a courtroom full of strangers and tell the most embarrassing, humiliating thing that happened to her young life and scarred her life, why would she do that? . . .

"I suggest to you that when [the victim's mother] came back in January and saw her daughter, she told you that her daughter was crying. . . . Those tears, ladies and gentlemen, were tears from remembering what had happened. . . .

"And you saw [the victim's brother] sit on that stand and he was asked questions. And I suggest to you if you were watching him carefully, you could see that he was reliving a horrendous experience, a traumatic experience for a nine-year-old child to witness. . . .

"I suggest to you that when I asked [the victim's brother] what did you see him doing on top of your sister, he sat there and he couldn't answer that question because of the emotion that was inside him; and you could see that."

287 (1991); *Commonwealth* v. *Sherick*, 401 Mass. 302, 304 (1987).

6. *Conclusion*. In summary: (1) the expert witness was properly qualified; (2) the admission of expert testimony vouching for the victim's credibility was harmless error; (3) the evidence of prior bad acts was properly admitted for a limited purpose; and (4) the closing argument was proper. Accordingly, we affirm the conviction.

*So ordered.*