NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-122

COMMONWEALTH

vs.

NICHOLE M. MATHIESON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A District Court judge convicted the defendant of uttering or passing a false lottery ticket, in violation of G. L. c. 10, § 30.[1] In proving its case, the Commonwealth primarily relied on Massachusetts State Lottery records (lottery records), which were admitted in evidence over the defendant's objection through the testimony of a State Lottery compliance analyst. We conclude that the cumulative errors at trial, including the Commonwealth's failure to authenticate the lottery records, resulted in an unfair trial for the defendant.

---

[1] The judge entered a required finding of not guilty on the charge of larceny from a person, pursuant to G. L. c. 266, § 25 (b).

Accordingly, we vacate the judgment and set aside the finding. Although the conviction must be vacated, the Commonwealth's evidence was sufficient to withstand a motion for a required finding of not guilty and, therefore, the Commonwealth may retry the defendant if it wishes to do so.

Background. Viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences in the Commonwealth's favor, the judge could have found the following facts. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). On May 28, 2022, the victims, an aunt and nephew, jointly purchased a ten dollar scratch off lottery ticket at a Cumberland Farms store in Athol. The ticket was a winning ticket worth one thousand dollars.[2]

The aunt placed the scratched-off ticket on top of her microwave for "safekeeping" until her nephew had time to cash it. Unbeknownst to either victim, another family member took a picture of the winning ticket and posted it on a lottery Facebook page used for keeping track of which stores sold winning lottery tickets. A couple of days later, the nephew attempted to cash the lottery ticket at a store in Worcester, but he was unable to get the money from the ticket. The store

_____

[2] Photographs of the ticket were admitted in evidence.

2

kept the lottery ticket and provided the nephew with a photocopy so that he could follow up with lottery officials, which he did.

At the bench trial, over the defendant's objection, a compliance analyst employed by the State Lottery to investigate fraud involving lottery products testified. He explained that his investigation began when the Worcester regional office contacted him about a ticket presented for payment that had been validated within the lottery system as "previously paid." The analyst was contacted to determine who had cashed the ticket prior to the nephew submitting a claim for it. The analyst spoke to customer service staff and obtained the "game book/ticket number," which was located on the back of the ticket at issue. The game number is used to "track instant tickets in the lottery" and the ticket number identifies the "individual book of [a] particular game."

The analyst then ran a search on the ticket through the lottery records to determine who had cashed the ticket. During his testimony, the analyst identified a report and he described the information therein as a "search in our back office system which tracks all transactions that occur in the lottery's mobile cashing app." The defendant continued to object and, ultimately, the judge admitted the report in evidence after concluding that it was a business record and, as such, was an exception to the rule against hearsay. Thereafter, the analyst

testified that he conducted a search of lottery records to show "every time that the ticket was scanned on the lottery's mobile cloud."  He explained that the records also include the name of the person or the player profile of the person who initiated the scans.

The analyst then identified another document, which was generated by a different employee of the State Lottery, that showed every lottery ticket from a particular game book that was cashed, and the details about when and where it was cashed.  The analyst ran that same search himself, but he was not the one who generated the document that was introduced at trial.  From this document, the analyst testified, again over the defendant's objection, that the victims' ticket was paid by the lottery on May 28, 2022.  The ticket was cashed "on [the lottery's] mobile app."  The judge admitted this document in evidence as a business record as well.

The analyst identified two additional documents:  the defendant's player profile page and claim history page.  The profile document showed the defendant's player information that she used to register for a lottery account, including demographic information such as her name, date of birth, and social security number.  The claim history document showed a query of claims during a particular time period for a specific player's account -- it showed the defendant's account activity

4

from May 29, 2022, to July 16, 2022.  The analyst testified that the defendant's account was used to scan the victims' lottery ticket during that time frame.  The relevant player profile and claim history records also were admitted in evidence over the defendant's objection.

Massachusetts State police Trooper Keith Segee also testified.  He interviewed the defendant and asked her about claims made on her lottery mobile application.  The defendant acknowledged that she had cashed the ticket in question using her mobile application, but asserted that she had won the ticket in a lottery game on Facebook and identified the person who ran the game.  Trooper Segee relayed what the defendant told him about the game as follows:

> "she played a lottery game and she won it in like a raffle or -- an online, basically, Facebook:  you would buy a ticket to the specific -- and then a winning number is drawn, like a number is picked.  And she received a photo of the ticket on Facebook messenger from Sonia Seveira."

The defendant attempted to show Trooper Segee the conversations she had with Seveira on Facebook messenger, but Seveira's responses were not visible.  The defendant said that it appeared as if Seveira had "blocked" her.  Over objection, Trooper Segee opined that the defendant had not received the ticket from Seveira.

Trooper Segee then testified to his interview with Seveira, which was conducted by himself and another State police trooper;

5

Seveira denied that she conducted a lottery game as the defendant had claimed. The troopers looked at Seveira's Facebook profile page on her cellular telephone. Trooper Segee testified that he and the other trooper believed Seveira was telling the truth and that she had not conducted an online lottery game or raffle. In overruling the defendant's objection to this testimony, the judge stated,

> "I'm just going to state that you don't have to be an expert to testify whether or not you think someone was lying to you, as that is an ability that is innately human. I would suggest any adult human being, to some degree, possess [sic] the capacity to know when someone is lying to them."

The defendant moved for a required finding of not guilty on all the charges. The judge allowed the defendant's motion as to larceny from a person but denied the motion as to uttering or passing a false lottery ticket.

The defendant then testified on her own behalf and repeated what she had told Trooper Segee: that she participated in a raffle conducted on Seveira's Facebook page by purchasing a "spot," "won" the winning ticket, and then cashed it. The judge found the defendant not credible and determined "her explanation of events to be implausible." He concluded that the defendant, by "cashing the ticket on the mobile app[,] represented to the lottery that she was the lawful owner of the lottery ticket"

6

when, in fact, she was not, and found her guilty of uttering or passing a false lottery ticket.

Discussion. 1. Standard of review. Here, "[a]s the defendant objected to the admission of [the lottery records] at trial, we review for prejudicial error." Commonwealth v. Tavares, 482 Mass. 694, 712 (2019). "We must first determine whether the judge committed an error of law or an abuse of discretion." Id. "If we find such an error, we then ask whether it was prejudicial." Id. "An error is prejudicial if we cannot find with fair assurance that it did not substantially sway[] the verdict" (citation omitted). Commonwealth v. Palermo, 482 Mass. 620, 625 (2019). For the reasons we discuss below, the cumulative errors at trial were prejudicial and warrant a new trial.

2. Cumulative errors. To admit business records at a trial, the records must first be authenticated "by a witness who is familiar with them" (citation omitted). Commonwealth v. Driscoll, 91 Mass. App. Ct. 474, 478 (2017).[3] See Commonwealth v. Purdy, 459 Mass. 442, 447 (2011) (authentication as condition precedent to admissibility). Very often, this witness is a

_____

[3] Alternatively, a business record can be authenticated by an affidavit pursuant to G. L. c. 233, § 79J. Here, the prosecutor did not present an affidavit to the judge nor did the prosecutor seek to admit an affidavit in evidence. Therefore, the lottery records were not authenticated pursuant to § 79J.

7

keeper of records, for instance, or a person who can affirm that the records are routinely made by someone who has "a business duty to make accurate entries and are relied on in the course of doing business" (quotation and citation omitted).  Driscoll, supra at 479.  The manner of authentication must be "sufficient to provide the necessary indicia of genuineness."  Id. at 478, citing Commonwealth v. Duddie Ford, Inc., 28 Mass. App. Ct. 426, 435 (1990).  See Commonwealth v. Lehan, 100 Mass. App. Ct. 246, 257 (2021) (witness did not sufficiently authenticate records where he simply received records during his investigation and "had almost no personal experience in reviewing" them).

Once properly authenticated, business records must meet the hearsay exception requirements set forth in G. L. c. 233, § 78, which states,

> "An entry . . . , or a writing or record, . . . made as a memorandum or record of any act, transaction, occurrence or event, shall not be inadmissible in any civil or criminal proceeding as evidence of the facts therein stated . . . because it is hearsay . . . if the court finds that the entry, writing or record was made in good faith in the regular course of business and before the beginning of the civil or criminal proceeding aforesaid and that it was the regular course of such business to make such memorandum or record . . . ."

See Mass. G. Evid. § 803(6)(A) (2024).  "Unless stipulated by opposing counsel, that foundation must be laid under § 78 before the judge can make the necessary finding that the records were 'made in good faith in the regular course of business and before

8

the beginning of the . . . criminal proceeding.'" Lehan, 100 Mass. App. Ct. at 255, quoting G. L. c. 233, § 78. Generally, this foundation is made by the person who made the record offered or by someone "who has personal knowledge of the facts stated in the . . . record offered." Commonwealth v. Bin, 480 Mass. 665, 677 (2018), citing G. L. c. 233, § 78. See Commonwealth v. Andre, 484 Mass. 403, 409-412 (2020) (business record entries "are routinely made by those charged with the responsibility of making accurate entries and are relied on in the course of doing business" [citation omitted]). See also Mass. G. Evid. § 803(6)(A).

Here, the defendant argues that the lottery records were not properly authenticated, and therefore should not have been admitted. She also asserts that the Commonwealth failed to provide the foundation necessary to admit the lottery records pursuant to the business records exception. We conclude that the lottery records were not properly authenticated nor was there a proper foundation that they were business records. Thus, the lottery records should not have been admitted.

The analyst testified that he did a "search in our back office system which tracks all transactions that occur in the lottery's mobile cashing app." The defendant objected, specifically noting that the analyst did not provide any testimony as to "his expertise for getting into the system" or

9

"how these records were generated."  Although the prosecutor argued in response to the objection that the records were "normally kept" in the regular course of business and only "searched for purposes of this investigation," the analyst never testified to such information.  Here, as in Lehan, 100 Mass. App. Ct. at 255-256, the analyst testified to the searches he conducted within the lottery system, but never testified that the records were true and accurate, or that they were complete. No other witness testified about the records.

In sum, no witness who had personal knowledge as to how the lottery records were "made" -- that is, generated or created -- testified.[4]  The analyst simply stated that he took the lottery ticket number and did "a query of that ticket number in our system to determine who cashed it."  With more information, such as further inquiry into the analyst's specific role in this investigation regarding specific record-keeping and creation, we might be satisfied that the lottery records were properly

---

[4] We acknowledge that it is possible that the lottery records were computer generated and thus not hearsay documents. See Lehan, 100 Mass. App. Ct. at 256 & n.7.  However, the record is devoid of information as to how the information contained within the documents was generated.  Compare Commonwealth v. Davis, 487 Mass. 448, 465 (2021) ("Computer-generated records are created solely by the mechanical operation of a computer and do not require human participation") with Commonwealth v. Brea, 488 Mass. 150, 160 (2021) ("Computer-stored records merely store or maintain the statements and assertions of a human being" [quotation and citation omitted]).

authenticated and admitted as business records.  However, the prosecutor failed to ask questions to clearly identify the analyst's credentials and knowledge.  The record, as submitted, does not clearly establish these requirements.

In addition to the authentication problems, we note additional errors that contributed to the defendant's failure to receive a fair trial.  The defendant asserts that the judge erroneously admitted testimony from Trooper Segee after the troopers viewed part of her and Seveira's Facebook messages and Seveira's Facebook page.  As noted above, Trooper Segee testified to the credibility of the defendant and Seveira; he opined that the defendant "did not receive the ticket from Seveira" and that Seveira "was telling the truth."  The judge overruled the defendant's objection, maintaining that it is an "innately human" ability to know whether someone is lying to them.

"Evaluations of credibility are, of course, within the exclusive province of the trier of fact" (citation omitted).  Commonwealth v. Powers, 36 Mass. App. Ct. 65, 68 (1994).  As such, the judge's statements were contrary to the general rule that "[n]o witness, expert or not, may offer an opinion as to the credibility of another witness."  Commonwealth v. Polk, 462 Mass. 23, 36 (2012).  See Commonwealth v. Montanino, 409 Mass. 500, 504 (1991), overruled on other grounds by Commonwealth v.

11

King, 445 Mass. 217 (2005) ("long-standing rule that witnesses may not offer their opinions regarding the credibility of another witness").  Accordingly, it was error for the judge to allow Trooper Segee to opine as to the credibility of the defendant and Seveira.

Additionally, as with business records, Facebook pages must also be properly authenticated and, if admitted for their truth, must fall within an exception to the hearsay rule.  Here, the Facebook pages and the statements contained within them were not properly authenticated.

Ultimately, the admission of the lottery records and the testimony regarding them, combined with the improperly admitted testimony and credibility determinations regarding the Facebook pages, were prejudicial to the defendant.  See Lehan, 100 Mass. App. Ct. at 258.  In these circumstances, the judgment must be vacated and the finding set aside.

3. Sufficiency of the evidence.  The defendant also contends that the judge erred in denying her motion for a required finding of not guilty because there was insufficient evidence to prove that the defendant intentionally uttered or passed a false lottery ticket or that she falsely made, altered, forged, uttered, passed, or counterfeited the lottery ticket with intent to defraud.  We disagree.

12

We review the defendant's claim to determine "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Latimore</u>, 378 Mass. at 677, citing <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307, 319 (1979).  While we conclude that the lottery records and testimony from the analyst were erroneously admitted, we consider them in the analysis of the sufficiency of the evidence.  See <u>Commonwealth</u> v. <u>Sepheus</u>, 468 Mass. 160, 164 (2014); <u>Commonwealth</u> v. <u>Bacigalupo</u>, 455 Mass. 485, 490 (2009) ("Ordinarily, in determining the sufficiency of the evidence, we include evidence improperly admitted").  Based on the evidence, in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence on the elements of uttering or passing a false lottery ticket.

<u>Judgment vacated</u>.

<u>Finding set aside</u>.

By the Court (Vuono,
Brennan & D'Angelo, JJ.[5]),

*Paul Little*

Clerk

Entered:  May 6, 2025.

_____

[5] The panelists are listed in order of seniority.